FRANK LEE, Appellant, v. KANSAS CITY GAS COMPANY, Respondent.

Kansas City Court of Appeals, January 20, 1902.

1. **Master and Servant**: NEGLIGENCE: HELPER: PLEADING: EVIDENCE. The failure to furnish, upon the request of the servant, a helper when necessary, is negligence; pleading and evidence are reviewed and held insufficient to charge the defendant with negligence in failing to furnish a helper.

2. ———: DEFECTIVE MATERIAL: SERVANT'S SELECTION. Where a servant assumes the selection of material to be used by him in doing a job of work he must examine them and exercise his best judgment in selecting such only as are fit for the purpose.

3. ———: ———: ———: EVIDENCE. The testimony relating to an injury of a gasfitter arising from the insufficiency of the material used in putting in a gas pipe and stove in a basement, which material he had selected himself, is reviewed and found insufficient to send the question of negligence to the jury.

Appeal from Jackson Circuit Court.—*Hon: E. P. Gates,* Judge.

AFFIRMED.

*Sam B. Strother* and *R. J. Ingraham* for appellant.

(1) It was the duty of the master to furnish what was reasonably required.  Whether he failed in this was for the jury to say.  Herdler v. Buck Stove Co., 136 Mo. 15; Ben-

der v. Railroad, 137 Mo. 244; Stoddard v. Railroad, 65 Mo. 520; Conroy v. Iron Works, 62 Mo. 35; Warner v. Railroad, 62 Mo. App. 188. (2) Instead of following the well-established rule, the court in passing upon this demurrer must have not only failed to indulge all reasonable inferences in favor of plaintiff, but in fact indulged them in favor of defendant. The rule was reversed. Dunlop v. Railroad, 144 Mo. 211; Hilz v. Railroad, 101 Mo. 42; Settle v. Railroad, 127 Mo. 342; Warner v. Railroad, 62 Mo. App. 189; Doyle v. Railroad, 140 Mo. 1; Donohoe v. K. C., 136 Mo. 670; Bender v. Railroad, 137 Mo. 244; Stoddard v. Railroad, 65 Mo. 520; Conroy v. Iron Works, 62 Mo. 35; Huhn v. Railroad, 92 Mo. 447; Waldhier v. Railroad, 87 Mo. 47; Flynn v. Railroad, 78 Mo. 203.

*Gage, Ladd & Small* for respondent.

(1) The trial court sustained the motion for a new trial because the court was of opinion that it erred in refusing defendant's instruction in the nature of a demurrer to the evidence, and was also of the opinion that on the undisputed facts the plaintiff was guilty of contributory negligence. Those were the grounds entered of record, but this court will sustain the action of the lower court if it was proper to set the verdict aside for any of the reasons mentioned in the motion for a new trial. Hewitt v. Steele, 118 Mo. 463, citing Lovell v. Davis, 52 Mo. App. 342, and Bank v. Armstrong, 92 Mo. 265. (2) Defendant was guilty of no negligence in furnishing straps and nails or asking plaintiff to do this job by himself. McCarty v. Rood Hotel Co., 144 Mo. 397; McKay v. Hand, 47 N. E. 104; Bohn v. Railroad, 106 Mo. 429; Shearman & Redfield on Neg., sec. 195; Friel v. Railroad, 115 Mo. 503; Williams v. Railroad, 119 Mo. 319; Winkler v. Basket Co., 137 Mo. 394. (3) The following authorities show conclusively that plaintiff was guilty of contributory

negligence, and also assumed the risk if there was any: Mc-Carty v. Rood Hotel, 144 Mo. 401; Junior v. Electric Light Co., 127 Mo. 79; Holloran v. Union Iron & Foundry Co., 133 Mo. 470; Fugler v. Bothe,. 117 Mo. 475; Epperson v. Tel. Co., 50 S. W. 795; Williams v. Railroad, 119 Mo. 319; Winkler v. Basket Co., 137 Mo. 394; Gleeson v. Mfg. Co., 94 Mo. 201; Shearman & Redfield, sec. 217; Boettger v. Iron Co., 124 Mo. 87; Lucey v. Hannibal Oil Co., 129 Mo. 32; Marshall v. Hay Press Co., 69 Mo. App. 256; Steinhauser v. Spraul, 127 Mo. 541; Wray v. Electric Light Co., 68 Mo. App. 380; Shea v. Railroad, 76 Mo. App. 29; Moore v. Railroad, 48 S. W. 487; Railroad v. State, 41 Md. 268; Robinson v. Railroad, 46 Texas 540; Railroad v. Rogers, 57 Fed. 378; Long v. Railroad, 96 Calf. 269 (31 Pac. 170); Railroad v. Harriet, 80 Texas 73 (15 S. W. 556); Railroad v. Mitchell, 97 Ga. 77 (18 S. E. 290); Railroad v. Drake, 53 Kans. 1 (35 Pac. 825); Railroad v. Smith, 67 Fed. Rep. 524.

BROADDUS, J.—The amended petition on which this case was tried alleges: That on the fourteenth of January, 1898, the defendant corporation, through its agents, ordered the plaintiff to put in a gas pipe in the basement of a certain house in Kansas City, Missouri; that it was the duty of the defendant to furnish for his use reasonably safe appliances and materials, but that the defendant negligently furnished plaintiff with imperfect, unsafe and defective appliances and materials for doing said work; that defendant knew, or could have known by the exercise of ordinary care, of the unsafe and defective condition of said appliances and materials, and the danger arising from the use of the same; that the said materials and appliances were imperfect, unsafe and defective in that a tin strap, furnished plaintiff to be used by him in said work in fastening and holding said pipe to the ceiling, was rotten and not of ordinary strength, and that in place

of screws to be used in securing said tin strap, plaintiff was furnished with and directed to use wire nails, which said nails and the heads thereon were too small and not reasonably safe and sufficient for that use and rendered the work dangerous—plaintiff not knowing of said danger.

Plaintiff then proceeds to allege that it was the duty of the defendant to furnish him with a helper in said work, which it refused and neglected to do, although it knew, or might have known by the exercise of ordinary care, the danger attending its failure to provide such helper; that owing to the negligence of defendant in furnishing said unsafe, imperfect and defective appliances and materials, and in failing to provide a helper, one end of said pipe, which said plaintiff was putting in, fell and struck the plaintiff whereby he was seriously and permanently injured.

The answer consists of a general denial, and an allegation of contributory negligence and that the plaintiff, knowing the danger, assumed the risk.

The jury found a verdict for the plaintiff in the sum of $1,490, which finding the court on motion set aside; from which action of the court in setting aside said verdict, plaintiff appealed. The court's grounds for setting aside the verdict were as follows: "For the reason that the court erred in not giving instruction No. 'N' asked by the defendant at the close of all the evidence, which said instruction No. 'N' asks that under the pleadings and evidence the verdict of the jury must be for the defendant; and for the further reason that the court is of the opinion that the plaintiff was guilty of contributory negligence which directly contributed to the injury."

It will be seen that the plaintiff relies upon the fact that the defendant did not furnish him with a helper to assist him in putting in the pipes, and on the "imperfect, unsafe and defective appliances and materials" with which he was furnished to do the work. There are no allegations in the

petition going to show in what manner a helper was required by the necessities of the business, nor does it allege in what particular the plaintiff would have been protected from the danger which culminated in his injury, by the aid of a helper. The rules of pleading require that this should be done. But after answer and trial the defect is waived. Yet the failure to state specifically the facts constituting this alleged dereliction of duty on the part of the defendant most certainly, in this case, left the circuit court in an embarrassing position during the trial; and to know just what evidence to admit and what to reject of that which was offered was a difficult matter and left the case, as to both the pleading and evidence, in an unsatisfactory condition in that respect. The element of definiteness was wanting.

It was shown by the evidence that the plaintiff requested a helper to assist him in doing the work, which said helper the defendant failed to furnish; and there was evidence tending to show that a helper was necessary from the requirements of the work to be done. This was negligence. Harper v. Railroad, 47 Mo. 579; Stoddard v. Railway, 65 Mo. 514. But it is useless to cite authorities on the point—it is self-evident. But there must be a casual connection between the act of negligence and the injury complained of. The petition did not allege, nor was it shown by the facts, what part a helper would take in the work; nor in what manner the plaintiff would have been protected by having one to assist him. In a general way, there was evidence that it would have been safer. Of course, we can conceive that if a helper had been on hand he might have held the pipe while it was being attached to the ceiling of the basement and the plaintiff's injury would have been avoided. This, at most, was only a probability. But in view of the evidence of the plaintiff that he considered the pipe was safely attached to the ceiling just before it became detached, the probabilities are equal, if not stronger, that he would not have called upon his helper

to hold the pipe in place, even if he had had such helper, and as a necessary consequence the injury would have resulted as it did. But this is not all: The evidence in the case shows beyond a reasonable doubt that the want of a helper was not the producing cause of the injury; and that it did not in the least contribute towards it; but that the appliances and materials and the manner in which they were used were the direct, proximate and only cause of plaintiff's injury, and if the defendant is to be held liable for said injury, it must be on that ground alone.

For the purpose of convenience we will adopt a statement of the facts bearing on this branch of the case made by Judge Smith in the opinion written by him and delivered by the court on the sixth day of May, 1901.

"Plaintiff, who was an experienced gasfitter in the employment of the defendant, was ordered by the latter's foreman to put a gas stove and the necessary pipe in a certain building. He first went to the building and after ascertaining where the stove was to be located and where the pipe would have to be placed in order to make the required connections, and the length of such pipe, he returned to defendant's shop for the stove, pipe and other material needed. He applied to the foreman for screws with which to fasten the straps that were to hold up the pipe. The foreman referred him to the storekeeper, but on applying to the latter he found there were no screws in stock. He then went to the shop and there selected the necessary straps and the nails required to fasten the same. The straps were scattered around on the benches and the nails were in the kegs. As the plaintiff expressed it in his testimony: 'The material was there in the shop and you were supposed to go and help yourself.' The joists in the building to be fitted with the pipe were ordinary pine or oak, two by twelve, and were not plastered over; and it is not disputed but that the straps could be sufficiently fastened thereto by nails. The plaintiff further testified that before

the time of the accident he had found that in some places the nails would give way and sometimes they would not; and that sometimes he would have to clinch them over the eye-hole in the straps, so that the heads would not pull through them.

"It further appears that in putting up the pipe in the building the plaintiff fastened one strip securely with the nails he had. Later on, when he had driven a nail into the side of another strap and placed the pipe therein, its weight was such that the strap was drawn over the head of the nail and the pipe fell upon plaintiff, inflicting serious injuries for which this suit was brought. An examination of the strap and nail was made after the accident and it was found that the difference between the eye of the strap and the head of the nail was very slight.

"It was, in effect, conceded that the plaintiff did not examine the nails and straps when he selected them. He did not notice that the head of the nail and the eye of the strap which gave way were so nearly the same size. He just assumed, without examining them, that the heads of the nails he selected were so large they would not, under the weight of the pipe, pull through the eyeholes in the straps. It may be presumed that such was the case generally with the nails selected, for it appears that those used in fastening on the first and third straps were sufficiently large to securely hold them in place. The one whose head proved too small was an exception to the general run of them as taken from the kegs in the shop.

"When defendant's foreman gave a special order to the plaintiff to put up the stove and pipe, which was interpreted by the plaintiff to imply authority to select from the defendant's stock such materials, except screws, as in his judgment were required for the execution of the order, this seems from the evidence to have been the understanding and practice of plaintiff during his two years or more in defendant's employ. And whether this selection of the materials was within the scope of his employment or not, yet, under the circumstances

already referred to, he can not be excused for negligence in performing it with such skill and ability as he actually possessed. He knew the use to which the straps and nails were to be put and it was his duty to examine them and exercise his best judgment in selecting such only as were fit for the purpose."

We are satisfied of the soundness of Judge SMITH's decision upon the remaining question in the case and have adopted it as a part of the opinion herein, same being as follows:

"It does not appear that the defendant caused the nails and straps from which plaintiff made his selection to be inspected, nor is it certain that ordinary care in making the inspection would have detected the unfitness of the nail, whose head was pulled through the eye of the strap, for the purpose for which it was to be used. The nail was not defective but was unfit or unsuitable for the use to which it was applied. It is quite probable that if it had been examined with extraordinary care, that is to say, if it had been inserted into the eye of the strap and pushed through to its head, that its unfitness or unsuitableness might have been discovered. But the defendant was not required, in making an inspection, to subject it to so severe a test. It was only required to use ordinary care in making the inspection. And, on the other hand, if the plaintiff assumed the duty of selecting the nails and straps, he was bound to use his eyes and make such selection with ordinary care. He was bound to no greater measure of care in making the selection than the defendant was in making the inspection.

"It can not be said that the nail in question was at all defective, but as it turned out simply unfit and unsuitable to hold the particular strap through whose eye it was driven; or, at least, its head was a fraction smaller than it ought to have been to securely hold the strap with the weight of the pipe cast upon it. It may have been, for aught that appears, sufficient

to hold the other straps. It may have been that the eye of the strap through which it was driven was larger than that of the others with which it was found. It may be that ordinary care in the inspection and examination would not have revealed the fact, if it was a fact, that it was smaller than the average. Nor does it appear that such inspection and examination would have shown the strap to be rotten or in anywise defective. It does not seem that there was anything in the appearance of this strap different from the others, or that if it was rotten or defective that the defendant could have discovered the fact by exercising ordinary care in the inspection or examination of it. Nor can it be said that there was anything in the physical appearance of either the nail or the strap that was calculated to put either defendant or plaintiff upon inquiry. The nail is what is known as a wire nail, and if the plaintiff had been apprised of the fact that its head was too small for the eye of the strap he could still have used it with safety by clinching the head. It seems this was usually the practice under such conditions.

"The plaintiff did not complain of the want of a sufficient supply of nails and straps from which to make the selection, nor it does not appear that there was, in fact, any such insufficiency.

"We are unable to discover any evidence, the tendency of which was to prove that the defendant was guilty of negligence in respect to the furnishing the plaintiff with defective or unfit nails and straps, or either.

It follows from these considerations that the instruction given by the court on its own motion for plaintiff which told the jury if it found from the evidence that the defendant negligently failed to furnish a tin strap and nails for fastening the pipe which were not reasonably sufficient for the purpose, and that by reason thereof the plaintiff was injured by the falling of the pipe he was putting up, its verdict should be for

plaintiff, was erroneous, since there was no evidence on which to base it."

In pursuance of the foregoing views we hold that the plaintiff was not entitled to recover under the pleadings and evidence and the cause is affirmed. All concur.