LOIS MODLAGL, Appellant, v. KAYSING IRON & FOUNDRY COMPANY.

Division One, March 15, 1913.

1. **NEGLIGENCE: Instruction: Blacksmith: Duty to Repair Tools.** It was the duty of a blacksmith, of thirty-five years' experience, employed as such in an iron foundry, in the absence of an agreement or rule to the contrary, to repair and keep in order the chisel with which he was injured and which he was holding against a rivet in a boiler while it was being struck by another employee, although he had been especially assigned to that work. The master may entrust to his servant the performance of the intermediate, ordinary and simple duties incidental to the servant's employment and resting in the servant's knowledge and skill.

2. ———: ———: ———: ———: **No Evidence.** To instruct on a proposition which there is no evidence to support, is erroneous; but where it was plaintiff's duty to repair the chisel before using it, it was harmless error to instruct the jury that plaintiff could not recover if the chisel was defective and was allowed to become so by him, although there is no evidence that he caused or permitted it to become defective.

3. ———: ———: ———: ———: **Selecting Others.** Whether or not there were other chisels of the character of the one which injured plaintiff in the box from which he or a fellow-servant made the selection, is immaterial, where it was his duty

Modlagl v. Iron & Foundry Co.

to repair the chisel before using it, if he thought those in the box were not reasonably safe.

4. ————: Fellow-servant: Question of Law: Submitted to Jury. To submit to the jury at defendant's request the question whether another blacksmith was a fellow-servant of plaintiff blacksmith, where the uncontradicted evidence is that they were fellow-servants, is error, but error of which plaintiff cannot complain, because in his favor.

5. ————: Verdict: Based on Conjecture. Where the evidence tends no more to show that the small particle of steel that flew into plaintiff's eye came from the chisel he was holding in his hand than from the rivet in a boiler upon which the chisel rested when it was hit by a fellow-servant, a verdict for defendant is proper, where plaintiff's petition charged that it came from the chisel.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock*, Judge.

Affirmed.

*Watts, Gentry & Lee* and *William L. Bohnenkamp* for appellant.

*Ellerbe & Brokaw* for respondent.

WOODSON, J.—The plaintiff instituted this suit in the circuit court of the city of St. Louis, against the defendant to recover $15,000 damages for personal injuries sustained by him through the alleged negligence of the latter.

A trial was had before the court and a jury, which resulted in a verdict and judgment in favor of the defendant, and in proper time and due form the plaintiff appealed the cause to this court.

The petition was as follows (formal parts omitted):

"Plaintiff states that the defendant is and was at the times hereinafter mentioned a corporation duly organized under the laws of the State of Missouri, and, as such, engaged in the business of conduct an iron foundry.

"Plaintiff further states that on or about the 8th

day of June, 1909, he was in the employ of the defendant as its servant and was on said date directed by the foreman of defendant, who had authority from the defendant to control the actions of the plaintiff and to give him orders as to the work which he was required by defendant to do, to assist a fellow-servant by the name of Rudolph Heerich in cutting off certain nuts and rivet heads from the side of an iron steel beam; that the said fellow-servant was using a sledge hammer, and it became necessary for the plaintiff to use a heavy chisel, which plaintiff would place upon the nuts and rivet heads which it was desired to remove and upon which chisel the said fellow-servant of plaintiff would strike heavy blows with a sledge hammer. Plaintiff further states that on said occasion defendant negligently and carelessly furnished to plaintiff for use in said work a certain steel chisel which was not reasonably safe for use for said purpose in this, to-wit, that said chisel was old and badly worn down from long use and from the heavy licks that had long been applied to it, and the top of said chisel was worn, cracked, rough and scaly and the edges of the top thereof were uneven, worn and jagged, all of which made said chisel unreasonably unsafe for the purposes for which it was intended to be used, because of danger of pieces of the top of said chisel breaking off when it was struck heavy licks with the sledge hammer, as it was necessary that it should be struck when used for said purpose. Plaintiff further states that the condition of said chisel above referred to and the danger incident to the use thereof for such purposes were well known to the defendant, or by the exercise of ordinary care on its part would have been known to it, before it furnished said chisel to plaintiff on said occasion.

"Plaintiff further states that while attempting to use said chisel for said purpose and while he was holding to the wooden handle which was inserted

through the hole near the top of said chisel, his said fellow-servant Rudolph Heerich struck said chisel a violent blow with the sledge hammer, as his duty required him to do in order to break off a certain nut or rivet head, and that as a result of the said defective condition of said chisel, when it was so struck, a small piece broke off of the top of said chisel and flew into the plaintiff's left eye, inflicting serious injury thereto, so that it became necessary for plaintiff to have the eyeball of his said left entirely removed.

"Plaintiff further states that as a result of his said injury to his eye he was obliged to go to a hospital and to receive medical and surgical treatment for a long time, was confined to his bed, has suffered and will suffer great pain of body and mind, has entirely lost the sight of his left eye, has incurred and will incur large expenses for the services of physicians and surgeons, for care and attendance at the hospital, for medicines and for artificial eye, and has lost and will lose the earnings of his work and labor, and as result of the injury to and removal of his left eye the sight of his right eye has also been impaired.

"Wherefore, plaintiff says he is damaged in the sum of fifteen thousand dollars, for which sum he prays judgment against defendant, together with the costs of this cause."

The amended answer was as follows:

"Comes now the defendant in the above styled cause and in answer to the plaintiff's petition filed herein denies each and every allegation therein contained.

"Further answering defendant states that plaintiff's injury, if any, was directly caused by his own negligence and carelessness and the negligence and carelessness of his fellow-servant, in this, that plaintiff and the said fellow-servant, or either of them, carelessly and negligently selected and took for his own use from among a pile of reasonably safe chisels

and took a chisel or tool which if unsafe plaintiff knew or by the exercise of ordinary care could have known was unsafe.

"Defendant further states that plaintiff was employed by defendant as a blacksmith and toolsmith; that it was his duty as such blacksmith and toolsmith to make, repair and put in reasonably safe condition all tools used by himself and other workmen of the defendant before they were used by himself or other employees of defendant; that plaintiff at the time of the accident alleged in said petition continued to use a tool which, if unsafe, he knew, or by the exercise of ordinary care could have known, was in an unreasonably safe condition; that said tool could have been repaired and made reasonably safe, but plaintiff carelessly and negligently continued to use the said tool without first having repaired the same. Defendant further alleges that if the small piece of steel mentioned in plaintiff's petition broke off from the chisel then being used by plaintiff, it was caused to break off and fly therefrom by the negligence and careless manner in which plaintiff held said chisel and by the negligent and careless manner in which plaintiff's fellow-servant struck the same with the sledge or hammer mentioned in plaintiff's petition; that said chisel was so held and said hammer was so swung that said chisel was struck or hit a glancing or slanting blow on the top thereof, thereby causing a piece of same to break; that had said chisel been struck directly on the top thereof said piece would not have been caused to break off and fly away from said chisel.

"For another and further defense defendant states that at the time of plaintiff's injury plaintiff was engaged in cutting rivet heads or bolts from iron cross beams; that in cutting said rivet heads or bolts small pieces or particles of steel are necessarily caused to break away from and fly from said rivet heads, chisel or sledge; that the danger of being struck there-

from is incident to and a part of plaintiff's work and was understood and known by plaintiff, and that plaintiff in his work as a blacksmith for defendant assumed. the risk of injury from such flying particles.

"Wherefore having fully answered, defendant prays to be hence dismissed with its costs."

The evidence for the plaintiff tended to show that he was a Hungarian and came to this country in the year 1907, could not speak the English language, and testified in the case through an interpreter. That he was a blacksmith and toolsmith by trade, having learned the trade in Europe and had followed that occupation about thirty-five years.

The defendant was engaged in the foundry business, employing some sixteen or eighteen men; and in connection therewith it ran a blacksmith shop in which two men were generally employed.

On June 1, 1909, the plaintiff was employed by the defendant as a blacksmith and toolsmith, and put to work in said blacksmith shop with one Robert Schuler, also a blacksmith and toolsmith.

That the defendant had a foreman by the name of John Hodecker, who had charge and control of all the men, both in the foundry and the blacksmith shop. That the foreman employed the plaintiff for the defendant, and frequently during each day, would give him orders as to work he wished him to do. That as soon as plaintiff would complete one job of work he would report to the foreman, and he would give him orders as to what he wished him to do next. In other words, the foreman gave him separate orders for each piece of work he did.

That Schuler was a fellow-servant, and had been employed in the shop much longer than plaintiff and had more regular duties to perform.

The plaintiff was called upon but a few times to make and temper tools, but did so whenever requested to so do. That the foreman never told him that such

work was to be a part of his regular duties, nor did he tell him that it would not be.

That after working two or three days and after making four or five new chisels, he was, by the foreman, ordered to take some old chisels and chippers and temper and repair them, but that the chisel which subsequently caused his injury was not one of those.

That three or four days after tempering said chisels and chippers, the foreman ordered the plaintiff to go out into the yard and cut or chip off some rivet heads or bolts from plates fastened on the side of a steel beam.    One Heerich was assigned to assist plaintiff in that work.

That the plaintiff picked up a chisel some five inches long with an eye in which was inserted a wooden handle, carried it out into the yard and began said work.    That he held the chisel on the rivet head by means of the handle, while Heerich struck the chisel with a sledge hammer.    That they progressed slowly with said work on account of the shape of the chisel they were using, and for that reason the plaintiff of his own volition returned to the shop for another chisel, approached the bench where Schuler was at work and where the chisels and other tools were kept by defendant for use.

That he asked Schuler if he had some other tool with which to cut off the heads of said rivets; that Schuler looked under the bench, selected a chisel known as a chipper and handed it to the plaintiff for his use. The plaintiff accepted the chisel without complaint, returned to the yard and began work with the chisel, assuming, as he said, without looking to see, that it was suitable and reasonably safe for the purpose.

That shortly after resuming work and just after Heerich struck the chisel, the plaintiff felt a pain in his eye.    Thereupon he stopped work temporarily and went into the shop and requested some man there to

248 Mo.—38

see if there was not something in his eye; finding nothing plaintiff returned to work and continued to labor until twelve o'clock; and after lunch he resumed work, but was shortly thereafter compelled to go home. He suffered considerably with his eye that night, but returned to work the next morning and worked a half a day, when he quit again and went to the hospital for treatment, where it was discovered that a piece of metal had penetrated his eyeball.

The sight of that eye was not only lost, but the eyeball had to be removed. The plaintiff also suffered pain in his other eye, which is also weakened from sympathy with the injured eye.

The chisel which it is claimed caused the injury, was of the proper type for the purpose of cutting off the heads of said bolts or rivets; that is not questioned by either party, and that it was the only one of that kind about the shop of which the plaintiff had any knowledge.

Plaintiff testified that the chisel introduced in evidence and filed as an exhibit in this court, is the one which caused his injury, while the oral testimony below and a physical examination thereof by this court show that the head thereof is all battered down, jagged at the edges, scaly and cracked, clearly indicating long and severe use.

The evidence failed to show whether or not the chisel introduced in evidence was any better or worse than the others which were on hand and in the shop at the time Schuler handed this one to plaintiff.

The evidence for plaintiff tended to show, which is a well known fact, that the blade of the chisel is hardened steel, made so as to cut metal without dulling the same, and that the head thereof is made soft and maleable so as to prevent breaking and pieces from flying therefrom when being struck with a sledge or other heavy metal instrument.

The evidence for the defendant tended to show

that all tools, including the chisels and clippers men-
tioned in the evidence, were made in the blacksmith
shop of the defendant; and that the steel of which
they were made was of the very best quality of tool
steel that could be procured.

That the ordinary and general duties of a black-
smith are to make, temper and repair any and all
kinds of tools and implements, including the chisels
and chippers mentioned in evidence, which are used
in and out of a blacksmith shop.

That the tools of the shop were stored in proper
and convenient places in and about the premises, and
that each and all the blacksmiths employed therein had
access thereto, and that each and all of them selected
for himself or themselves, any or all of said tools and
used them as the occasion might require, or as his or
their judgment might dictate was suitable and neces-
sary in the proper performance of his or their duties
to the employer.

That the duties of the plaintiff were the same as
those of any ordinary blacksmith; and that he was un-
der the charge and control of the foreman, and per-
formed such services from time to time as he was or-
dered by the foreman.

That there was a pile of chisels, chippers or rivet
busters, as they were variously called, in the shop,
in a good state of repair, from which Schuler selected
the one it is claimed caused the plaintiff's injury;
and if I correctly understand the record, some of them
were those previously made, tempered or repaired by
plaintiff; but that point is not made clear by the rec-
ord—fairly inferable, however, therefrom, if I cor-
rectly understand the evidence.

Such additional evidence introduced as may be
necessary for a proper understanding of the legal
propositions presented, will be stated in connection
therewith.

Counsel for appellant assign but two errors, and

they grow out of the action of the trial court in giving instructions numbered five and six in behalf of the defendant.

Those instructions are as follows:

"5. The court instructs the jury that if they believe from the evidence in this case that it was the plaintiff's duty as a blacksmith in the employ of the defendant to repair and keep in order tools used by him in work performed by him, and if you further believe from the evidence that the tool used by plaintiff at the time of his accident was defective and was allowed to become so by plaintiff, or if you find that plaintiff negligently and carelessly failed to repair and trim said tool, if you find that it could have been repaired and trimmed, then the plaintiff is not entitled to recover and your verdict must be for the defendant.

"6. The court instructs the jury that if you find from the evidence in this case that the chisel used by plaintiff at the time of the accident was either selected by himself or by the blacksmith, Robert Schuler, mentioned in the evidence, from a supply of chisels, some of which were reasonably safe for use in the work in which plaintiff was engaged, and if you further find that the chisel was selected by the said Robert Schuler and that said Robert Schuler was a fellow-servant of the plaintiff and not a vice-principal of the master, then your verdict should be for the defendant."

I. Counsel for appellant challenge the correctness of instruction numbered five in the following language.

"(a) Because it permits the jury, without any evidence authorizing such a finding, to find that it was a part of the plaintiff's duty as a blacksmith in the employ of the defendant, to repair and keep in order tools used by him. The undisputed evidence is that plaintiff's only instructions to keep the tools in order were instructions given on a certain day, when

he had been in defendant's employ four or five days, relating to certain particular chisels which were repaired by him on that day, and which did not include the tool by which he was injured and that never was he directed to repair or keep in order any other tools of the defendant.

"(b)  The instruction is further erroneous in permitting the jury to find that the defective chisel which injured plaintiff was allowed to become defective by plaintiff.  There is no evidence that plaintiff ever saw that tool before the moment when he got it from Schuler, nor that he ever had it placed in his care, or been ordered, either specially or generally, to keep it in good condition.

"(c)  The same is true as to the next clause of the instruction, which permits a finding that the plaintiff negligently and carelessly failed to repair and trim said tool."

We will consider these alleged errors in the order stated.

(1)  The first objection urged to this instruction is in our opinion wholly untenable.

There was an abundance of evidence upon which to predicate that part of the instruction which authorized the jury to find that it was a part of the plaintiff's duty as a blacksmith to repair and keep in order the tools with which he worked.

The record shows, without contradiction, that the plaintiff was a blacksmith with thirty-five years experience, and that he was employed by defendant as a blacksmith, to perform the ordinary duties of such, which everyone knows is to make, temper and repair all kinds of tools when broken and out of repair, and to repair all kinds of implements and machinery used within and without a blacksmith shop.  All mechanics, machinists, farmers and all others who have and use tools, implements and machinery, which are broken or otherwise get out of condition, take them to the black-

smith for repair. This is not only a daily, but an hourly, and I might add, a continuous occurrence. That being unquestionably true, it would be unreasonable to hold that it was no part of the blacksmith's duty to repair his tools, etc., especially when there is no other class of persons under the sun who do that class of work.

A ruling to the contrary would be like holding that it is no part of a mechanic's duty to sharpen his tools, or that the study of the law is no part of the duty of a lawyer.

Not only that, plaintiff testified that he did make some of these chisels and tempered others, on the second or third day after he began to work for the defendant; but he seeks to escape the legal effect of that evidence by testifying that he did that work under the special order and direction of defendant's foreman. Suppose that is true, it was none the less a part of his duty to so do, just as it was his duty to do any and all the other things he did under the so called special orders of the foreman. And in this connection it should be borne in mind that plaintiff does not contend that he was not employed to do general work in the blacksmith shop, which of course includes the making, tempering and repairing of tools, but insists that as a matter of fact he did no general work, but only such work as was specially assigned to him.

Should it be conceded that such was the case, still that fact would not change the character of his general employment, for the simple reason that under a general employment the master has the legal right to direct his employees to do any and all things that are embraced within the scope of the general employment.

In fact, that is usually what is done, the reason being, as previously stated, that the master has the right to conduct his own business in his own way and to determine what matters shall be done first, and by whom; and he is under no legal obligation to permit

the employee to select the kind of work he will do, or the time when he will do it.

It should also be borne in mind that there is not a word of evidence in this record which tends to show that the defendant agreed to repair any of the tools with which the plaintiff was to work, or in any manner relieve the plaintiff of that simple duty which the law imposes upon him.

That duty of the employee is based upon the well known rule of law which is to the effect that the master may trust the servants to perform the intermediate, ordinary and simple duties incidental to the servant's employment and resting upon the servant's knowledge and skill.

LAMM, J., in speaking for this court, in the case of Forbes v. Dunnavant, 198 Mo. 193, l. c. 209, well stated this rule in the following language:

"By this view, we start with the postulate that a servant is presumed to possess, not only common sense, but certain knowledge peculiar to his trade, or art. The master may be presumed to hire, not only the bodily services of the servant (his hands, eyes, ears, muscles and legs), but the skill and knowledge pertaining to the servant's art or trade and possessed by the latter. Hence, it is steadily held as sound law that the master may trust the servant to perform the intermediate, the ordinary and simple duties incident to the servant's employment and resting upon the servant's knowledge and skill. For instance, a carpenter knows a good board as well as his master, and in many cases, better. A master buys a mass of raw material—some bad, some good, a result incident to all buying by the quantity in the market. Must he be present in person, or constructively, at every precise moment of time to select and deliver to that carpenter a sound board, so the carpenter will not hurt himself or his fellow-craftsman, or may he trust that carpenter to select a good board from the mass of raw ma-

terial? We think there can be but one answer to this question. Lord COKE says: 'There are two instruments either to confirm or impugn all things—reason and authority.' Certainly, reason is with the defendant in this case. The reason of the thing lies with the proposition that Dunnavant could properly trust the judgment of Forbes and Redford to select sound ledgers. Because, by the very act of hiring themselves to him, they held themselves out as capable of doing that very thing. Authority lies the same way: Bowen v. Railroad, 95 Mo. l. c. 277; Herbert v. Wiggins Ferry Co., 107 Mo. App. l. c. 299 et seq., and cases cited; Allen v. Iron Co., 160 Mass. 557; Dewey v. Parke, Davis & Co., 76 Mich. 631; Beesley v. Wheeler & Co., 103 Mich. 196; Cregan v. Marston, 126 N. Y. 568; Callahan v. Trustees, 180 Mass. 183; Miller v. Railroad, 175 Mass. 363; Colton v. Richards, 123 Mass. 484; Johnson v. Towboat Co., 135 Mass. 209; O'Connor v. Rich, 164 Mass. 560.

"See, also, the pronouncements of this court on a similar question—the non-reliability of the master where the servant, a miner, is intrusted with the duty of inspecting his own drill-holes. [Knorpp v. Wagner, 195 Mo. 637; Livengood v. Lead & Zinc Co., 179 Mo. 229; Fisher v. Central Lead Co., 156 Mo. 479.]"

The same doctrine is announced in the following cases: Beckman v. Brewing Association, 98 Mo. App. 555; Miller v. Railroad, 47 N. Y. Supp. 285; Marsh v. Chickering, 101 N. Y. 396; Cahill v. Hilton, 106 N. Y. 512; Patnode v. Harter, 20 Nev. 303.

In the case at bar, the repair of the tools of the shop was simple and could be readily and easily made by any blacksmith. In fact, I never knew or never before heard of one blacksmith repairing these simple tools for another. What would be the sense in taking a broken or damaged tool from one blacksmith shop to another to have it repaired, or hand it to another smith in the same shop for that purpose, when both

are engaged in precisely the same work, both for the master personally and for the master's patrons.

To hold in the case at bar, that the battered chisel, mentioned in the evidence, should have been taken to another shop or handed to another, Schuler, plaintiff's fellow-servant in the same shop, for repairs, would not amount to respectable nonsense, yet if we follow the contention of counsel for plaintiff to its logical conclusion, that would be the inevitable result, or we would be forced to hold the defendant is liable in this case for having failed to do that nonsensical thing.

We are, therefore, of the opinion that the instruction is not vulnerable to this assault.

(2) There is, as an abstract legal proposition, some merit in the second objection made to this instruction, namely, that there is no evidence preserved in the record which tends to show that the plaintiff caused or permitted the chisel in question to become defective.

I have carefully read all the evidence presented by the record and have failed to find any evidence whatever tending to show that plaintiff caused or permitted the chisel to become defective. The only reasonable inference deducible from the record is, that the chisel was in the condition in which we find it, at the time plaintiff entered the service of the defendant.

To instruct upon a proposition which there is no evidence to support, is clearly erroneous; but the view we have taken of this case renders that error harmless, because it is wholly immaterial who caused or permitted the chisel to become out of repair, as it was the duty of the plaintiff, as before stated, to repair the same before using it.

(3) The last objection urged by counsel for plaintiff against said instruction is untenable, for the reason that it was his duty to repair all such tools when found by him to be in a defective condition be-

fore using them, in the absence of an express order to the contrary, which was not given in this case; but upon the contrary the record discloses the fact to be that the plaintiff of his own volition selected the first chisel used by him in cutting off the heads of the rivets mentioned in the evidence, and becoming convinced that it was not suitable for that purpose, he also of his own volition returned it to the shop and requested Schuler, his fellow-servant, to hand him another, without designating the kind, and in response to said request Schuler handed him the chisel which it is claimed caused the injury.    Clearly that was no order for plaintiff to use this chisel, and even though it should be so considered, still there is no pretense made that Schuler had any authority to give any such order or to select any particular chisel for him.

In passing, it may not be out of place to add, that the rule of law discussed in this paragraph of the opinion and the subdivisions thereof, should not be confounded with that rule which requires the master to furnish his servant with a reasonably safe place in which to work and reasonably safe instrumentalities with which to labor.    Under that rule the servant has nothing whatever to do with the place or the instruments with which he works, and in most cases, if not in all, he has no control whatever over either, nor authority to make or repair the same, and in all probability has no knowledge or experience  along  those lines.

But in the case at bar, as previously stated, and in like cases, the very nature of the servant's occupation requires him to make, repair and use this character of instruments as the means, if not the sole means, by which he discharges his duties to the master; and in fact in many, if not in the great majority of the cases, the servant knows more, and is by far more experienced in making, repairing and using such tools and instruments, than the master himself, who often has

no knowledge or experience along those lines, and who does and must depend upon his employees who are skilled in those matters to do his bidding, under the supervision and control of a general foreman.

The rule of law involved in the case at bar is not an exception to the rule which requires the master to furnish his servants with a safe place and with reasonably safe instrumentalities with which to labor, but is itself elementary in character, and it is as old and as well founded in our jurisprudence as is the law of safe place and safe instruments.

We are, therefore, of the opinion that there is no reversible error in this instruction.

III. Counsel for plaintiff enter two objections against instruction numbered six, previously copied, which are stated in the following language:

"(a). It permits a finding that there was a supply of chisels, some of which were reasonably safe for use in the work in which plaintiff was engaged, and that Schuler or plaintiff selected the chisel in question from such supply. There was no evidence on which to base this part of the instruction, because while defendant showed that it had three chisels of the type of the one which injured plaintiff, it did not offer any evidence from which the jury could find that any one of the three was reasonably safe for the work in which plaintiff was engaged.

"(b). The next and most glaring fault of this instruction is that it set the jurors up as judges of law instead of judges of fact and submitted to them the question as to whether the plaintiff and Schuler were fellow-servants, for it proceeds as follows:

"'And if you further find that the chisel was selected by said Robert Schuler and that said Robert Schuler was a fellow-servant of the plaintiff and not a vice-principal of the master, then your verdict should be for the defendant.'"

(a). Attending the first: This objection complains of the instruction because it authorized the jury to find that there were other chisels on hand which were reasonably safe for the purpose of cutting the rivets mentioned, when, as insisted by counsel, there was no evidence upon which to base it.

Counsel have certainly overlooked some of the evidence, for plaintiff, himself, when testifying regarding the chisels which he was using in doing this work, stated that he had made four, tempered and repaired some two or three others, presumably of the same type as those used by him, for otherwise there would have been no point in testifying in regard to them; and defendant's witness Schuler testified that there were two or three other chisels of the same character there at the time, and that plaintiff made his own selection.

That evidence was clearly sufficient upon which to base said instruction.

But independent of all of that, it was wholly immaterial whether there were other chisels there or not, for the simple reason that if they were not there, then it became the plain duty of the plaintiff to repair the one he had before using it, if he thought or believed it was not reasonably safe for the purposes for which he intended to and did use it.

There is no merit in this objection.

(b). The next objection lodged against this instruction is equally destitute of all merit.

It is complained that it erroneously submitted to the jury, instead of the court, the question as to whether or not Robert Schuler was a fellow-servant of the plaintiff.

After a careful reading of the entire evidence in the case, we are satisfied that the action of the court in submitting that question to the jury was erroneous, but unfortunately for the plaintiff the error was committed in his favor and not against him.

The uncontradicted evidence is that they were fel-

low-servants, and there was not a scintilla of evidence tending to show that Schuler was a vice-principal.

The plaintiff's statement of the case concedes that fact by the use of the following language:

"Defendant employed sixteen or eighteen men about the work in the foundry, and amongst them a blacksmith named Robert Schuler. There was a foreman named John Hodecker who had charge of all the men, including the plaintiff."

Every word of that statement is fully supported by the evidence, and shows conclusively that Schuler was the fellow-servant of the plaintiff.

III. There is a thrid and final reason why the judgment of the circuit court should be affirmed, and that is, the evidence tends no more to show that the piece of metal which struck and destroyed plaintiff's eye came from the chisel, than that it came from the rivets which were being chipped off by the use of the chisel.

This is not denied, except in that it is claimed that the original answer of the defendant, which plaintiff introduced in evidence, admits that fact; but upon an examination of the answer, as an entirety, we are satisfied no such admission was intended, but upon the contrary, the answer pleaded the fact to be that the plaintiff's eye was injured by a piece of metal that came from a rivet head while they were being cut off by means of said chisel, which was one of the risks incident to the plaintiff's employment, and which under the law he assumed.

Finding no reversible error in the record, the judgment should be affirmed; and it is so ordered.  All concur.