JOHN MILLER, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 5, 1914.

1. **MASTER AND SERVANT: Contributory Negligence: Driving Railroad Spikes.** Plaintiff had been a section man in defendant's employ for a number of years and was engaged in pulling out railroad spikes from old ties, putting in new ties and fastening the rails by driving in the old spikes. The heads of these old spikes had become coated with oil and

were called grease heads. The metal hammer or maul with which they were driven had become chipped on the edge and plaintiff stated to the foreman twice in eleven years, the last time the morning of the accident, that he did not believe he could drive them; when the foreman replied that he would have to as that was all they had. After driving two or three dozen he selected from a large number a spike that was crooked and had a battered head and struck it a glancing lick when it flew out and injured his leg. It was *held.* that the defendant was not liable.

2. ————: **Master's Right: Servant's Care.** The master in directing that a servant perform a certain service has a right to assume that the servant himself will exercise ordinary care in the act of performing that service.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk,* Judge.

REVERSED.

*Robert T. Railey* and *Ben J. Woodson* for appellant.

*Thompson, Griswold & Thompson* for respondent.

ELLISON, P. J.—Plaintiff was engaged in defendant's service as a section hand and received injuries which, attributing to defendant's negligence, he instituted this action for the resulting damage. He recovered judgment in the circuit court.

Defendant insists that no case was made for the jury and that error was committed in refusing its demurrer to the evidence. The following are the undisputed facts bearing on the question. The work defendant had its section men to do consisted, among other things of drawing out old nails or railroad spikes from the ties, replacing old ties with new ones and spiking the rails back to the new ties with the old nails. On the day of his injury plaintiff was driving a spike into a tie when it flew out and struck him on the leg, inflicting the injury of which he complains. The heads of the nails by reason of oil dripping from cars had

become partly covered with a coating of grease. They were spoken of by witnesses as "grease heads." The hammer, or maul, with which these were driven was a large metal one, the end or striking surface, called the face, was near to an inch and a half in diameter. The hammer used by plaintiff and the two or three others, used by other workmen had been in service several years and the sides or edges of their faces had become chipped and more or less defective.

Plaintiff was a section man of long experience. He had been engaged in this work for defendant eleven years or more. He had full and complete knowledge of the work and the implements he used. The hammer became battered by long service in his hands. The old spikes driven into the new ties, were selected by himself. Long service and experience had shown him all the risk there was in working with such a hammer on such spikes. It is not pretended that he had to drive any particular spike, nor that any of a number were selected for him. He repeatedly stated in testimony that he selected them himself. He however did testify that twice in his service he had told the foreman, in effect, that these implements were not in proper condition. One of these occasions was the morning he was hurt when he said to him that he "did not believe we could drive those greased heads with those hammers," and the foreman replied, "You will have to, that is all we have got; all the hammers we have got." He had driven two or three dozen when he picked up one that he said was "crooked and battered" and "struck it a glancing lick," when it flew out and hit his leg. On being recalled he repeated a second time, that the reason this spike struck him was "because of the way it was battered up and greased."

Now leaving out of view all questions of plaintiff, in the circumstances of his service, the simple character of the work (on which subject see Judge JOHNSON's opinion in Rahm v. Railway, 129 Mo. App. 679) and

his entire understanding of it; is there any ground upon which he can be relieved of negligence in selecting a battered and crooked spike and striking it a glancing lick? It will be noticed that this does not present a case of hidden defects or of improper construction; and we are left to that well-recognized rule stated in Forbes v. Dunnavant, 198 Mo. 193, 209, "that the master may trust the servant to perfrom the intermediate, the ordinary and simple duties incident to the servant's employment and resting upon the servant's knowledge and skill." Furthermore, the master, in directing that a servant perform a certain service, has a right to assume that the servant himself will exercise ordinary care in the act of performing such service." [Pulley v. Standard Oil Co., 136 Mo. App. 172.]

We think this case cannot be taken from under the control of the rules of law stated in Modlogl v. Iron and Foundry Co., 248 Mo. 587. Considered in connection with that case, there can be no doubt that plaintiff has only himself to blame in selecting a spike which was battered up and crooked. As we have said, it had not been selected for him by the foreman. He was only to get those he was to drive, from among the great number at hand. No. one knew better than he what spike could be driven. In Lee v. Kansas City Gas Co., 91 Mo. App. 612, the servant had a lot of nails to select from in nailing up metal straps to hold a gas pipe. He selected one unfit because the head was too small for the islet in the metal strap; and it was held the selection was his and not his master's.

We find we must reverse the judgment. All concur.