## LAWRENCE ROGERS, Respondent, v. HAMMOND PACKING COMPANY, Appellant.

### Kansas City Court of Appeals, November 11, 1912.

1. **NEGLIGENCE: Master and Servant: Defective Tools.** Plaintiff, while at work cutting away an old concrete base for a huge flywheel in an ice plant, using a piece of a file and striking it with a steel hammer, was struck in the eye by a piece of steel or concrete and the eye destroyed. The foreman gave him the file, and instructed him how to use it, and he was using it as instructed. He did not know the danger of striking its brittle end with a steel hammer. *Held*, that the file, on account of its temper, was not a reasonably safe tool for the work the foreman directed to be done with it, and that the defendant was guilty of a negligent breach of its duty to furnish its servants with reasonably safe tools.

2. ———: ———: **Evidence.** In this class of cases plaintiff must not only show negligence of the master, but also that such negligence caused the injury, and if the accident might have resulted from more than one cause, for one of which the master is liable and not for the others, it must be shown that the injury arose from the cause for which the master is liable.

Appeal from Buchanan Circuit Court.—*Hon. Wm. K. Amick*, Judge.

REVERSED AND REMANDED.

*William E. Stringfellow* for appellant.

*B. J. Casteel* and *J. D. McNeely* for respondent.

JOHNSON, J.—This is a suit by a servant against his master to recover damages for personal injuries alleged to have been caused by negligence of the mas-

ter. The answer in addition to a general denial contains pleas of assumed risk and contributory negligence. Plaintiff recovered a judgment in the circuit court and the cause is here on the appeal of defendant.

Plaintiff was employed as a laborer in the meat packing establishment of defendant at St. Joseph and at the time of his injury was at work in the room where the heavy and powerful machinery of the ice plant was installed. The machinery was not running and defendant was putting it in proper repair and condition for the work of the approaching busy season. A heavy flywheel eighteen feet in diameter, the supports of which had been imbedded in concrete for ten or eleven years, had become somewhat unstable owing to the separation of the concrete from the metal base on which the wheel was swung and defendant had decided to replace the surrounding concrete with zinc to correct the needless vibrations and loss of motion occasioned by the lack of proper rigidity in the foundation. Plaintiff and other workmen were set to work removing the concrete from around the base of the wheel and were engaged in such work when a flying particle of steel or some other hard substance struck plaintiff in one of his eyes and injured it so that the oculist whom he consulted found it necessary to remove the eyeball. Plaintiff is an Italian who, at the time of his injury, had been in the United States about eight years and spoke and understood the English language imperfectly. His work had not been of a nature to give him any knowledge of the uses and properties of tempered tools and he was ignorant of the dangers that lurk in such tools when appulsively used.

It appears that a hammer and chisel had to be used in removing the concrete and that, owing to the inaccessability of some of the concrete, a smaller shorter chisel was required than in places less ham-

pered. It is the contention of plaintiff that the foreman of defendant included among the tools furnished plaintiff a piece of an old file to be used as a chisel in digging out the places that could not be reached by the chisels and that plaintiff was so using this piece of file and was striking the broken end with a hammer when a piece of steel broken from the end of the file being hammered flew into his eye. The negligence alleged in the petition is "that defendant, wholly neglecting and disregarding its duty in that behalf, did, through its foreman and vice-principal, under whom plaintiff was then and there working, furnish plaintiff with a part of a broken file with which to chip said cement and concrete out by using same as a chisel and by striking said file with a hammer, and plaintiff states that said piece of file was defective in that it was too brittle for such use and could not be used without causing pieces of steel to break and fly therefrom, which said defects were known to defendant, its foreman and vice-principal, or might by the exercise of ordinary care on their part have been known to them, but which was not known and could not be discovered with due care and caution by plaintiff.

"Plaintiff states that while so using the said defective tool so negligently furnished him by defendant and while acting under the orders of defendant and in the scope of plaintiff's employment a piece of said file broke off, striking plaintiff in the left eye and destroying the sight thereof and that said eye was thereby so cut and lacerated and injured that it had to be removed."

The evidence shows that most of the concrete to be removed was very hard but there were small areas where it had been soaked with oil from the axle bearings and plaintiff states that he was working in one of these places and that the concrete was rotten and soft and offered small resistance to the file point. It

is a fair inference from the testimony of plaintiff that he was furnished the necessary tools by the foreman, instructed by the foreman in their use, and that he was using the file in the manner shown him by the foreman when the injury occurred.

We quote from his testimony: "Now, whom were you working under? A. Mr. Jack Curtis. Q. He was foreman over you? A. He was the foreman over me. Q. Did Mr. Curtis furnish you with any tools to do this work? A. Yes. Q. What kind of tools? A. He gave me a long chisel about two feet long. Q. Well, what do you think two feet are? How much? (Witness indicated with his hands.) Q. What else did he furnish? A. And he gave me a piece of iron about eighteen inches long. Q. And what else? A. And a piece of file. Q. And a piece of file? How long was that? A. About twelve inches long. Q. What else did he furnish you? Did you have any hammer, or anything like that? A. And a hammer. Q. What kind of hammer? A. Pound-and-a-half hammer. Q. What were you to do with those tools that he furnished you? A. Because sometimes it don't fit, the place was not large enough, and he took me out there and showed me the tools to work with. Q. Why weren't you using those other tools— that long chisel and that long piece of iron? A. I couldn't use it. Q. Why? A. Why, they was too long; the space was not large enough to work."

"Q. Now Mr. Curtis told you what to do? A. Yes. Q. And handed you those tools? A. Yes, I got the tools. Q. And that is all he said to you? A. He came there and showed me. Q. Did he use the tools himself? A. Yes. Q. What tools did he use? A. All of them. Q. All of them? A. Yes. Q. You saw Mr. Curtis use all four of those tools I show you? A. All four of them, yes. Q. How long was the chisel which Curtis gave you? A. A little longer than

them there. Q. Was it three feet long or two feet long? A. Over two feet long. Q. Over two feet long? A. Yes. Q. And how long was the file that you say he gave you? A. About twelve inches. Q. How long was the other piece—the smaller piece of iron? A. Over eighteen inches."

. . . . . . . . . . . .

"Q. Did you use any kind of chisel except this file? A. I used that bigger one when we had more room on the other side. Q. Oh, you did use both of them? A. Yes."

. . . . . . . . . . . . . . .

"Q. But just at the time you got hurt, you had taken this file? A. Yes. Q. And were using it as you indicated? A. Yes. Q. Well, however long it was, you had been working by yourself more than two hours before you got hurt? A. Yes; when we got to one side, you know, then we started on the other side. Q. It had been more than two hours since you had worked with the other man? A. I think so. . . . Yes, I worked all the way there. I cannot use this big chisel and piece of iron, but when I go in the wheel, I have room enough to work with it."

While doing the work described in the foregoing testimony plaintiff was kneeling and, of course, his eyes which were unprotected were not far from the top end of the file which was so hard and brittle that it would be shattered and broken by the impact of blows from a steel hammer of the weight described. The pointed end of the file was not so highly tempered. Indeed witnesses for defendant state that it was too soft to dig out hard concrete and would bend and double back under the force of the hammer. The answer of plaintiff to this contention is that the oil-soaked concrete which was composed of cement and sand was so rotten that it was as soft as plaster and yielded to the point of the file. Shortly after the injury an oculist examined the wound and found that

the foreign particle had penetrated the ball to a point back of the equator and that the injury was so serious plaintiff would lose the sight of both eyes if the injured ball were not speedily removed. Thinking that the imbedded particle might be steel he used an electro magnet to draw it out, but without results. He states, however, that owing to the depth of the penetration adhesions could have held the particle back, and, therefore, that the result of his use of the magnet did not conclusively demonstrate that the particle was not steel. He was introduced as a witness by plaintiff and on cross-examination stated that the appearances of the wound showed that it might have been caused by a piece of stone or concrete or by a piece of metal. About ten days after the injury he removed the ball. It does not appear that he dissected it to ascertain the cause of the injury.

The evidence of defendant contradicts that of plaintiff on all essential points. As to some very material particulars the testimony of plaintiff stands alone and is opposed by the testimony of a number of witnesses. In the first place all of the witnesses except plaintiff state that no file was given him by the foreman; that plaintiff did not and could not have worked with a file in the place where he was working when injured; that the concrete there was as hard as stone, was accessible to the use of the large chisel and that plaintiff was not working alone but as a helper to a fellow workman who held the chisel while plaintiff struck it with a small sledge hammer. Further it is shown that dust and bits of hard concrete flew in all directions from the point of the chisel and continually flew into the faces of the workmen; that the chisel was pointed forward at such an angle that its head was only four or five inches from the floor and that plaintiff was bent over delivering short arm strokes and with his eyes not over a foot and a half from the chisel head.

Rogers v. Packing Co.

Though so strongly contradicted, we deem the evidence of plaintiff substantial and shall assume for the purposes of the discussion of the demurrer to the evidence which counsel for defendant insist should have been given, that the foreman gave plaintiff a piece of file as one of the necessary tools for use in the work and instructed him in its use; that plaintiff was using it as instructed and did not know of the danger of striking its brittle end with a steel hammer and that the file, on account of its temper was not a reasonably safe tool for the work the foreman directed to be done with it. On this hypothesis we are compelled to hold that defendant was guilty of a negligent breach of the well-recognized duty of a master to exercise reasonable care to provide his servant with reasonably safe tools. Knowing as he must and should have known that the blunt end of the highly tempered file would be too brittle to stand the shock of hammer blows, the risk of injury to the servant from such use would be one a reasonably careful and prudent master would not impose on his servant, and, consequently, one that could not be classed as inherent to the service.

We agree with defendant that the mere fact that the tools furnished plaintiff by the foreman included a piece of file, of itself, would be insufficient evidence of a direction to plaintiff to use the file as a chisel and to strike it with a hammer and that if plaintiff, of his own volition, made an unauthorized, improper and dangerous use of the file, he cannot recover. "A master is not liable for an injury caused by the servant's unauthorized use of an inappropriate tool, especially where the master has furnished proper tools for the work." [Moran v. Brown, 27 Mo. App. 487.] And "the mere fact that an appliance happens to be placed where it can be used for the performance of the work which the injured servant undertook to do with it does not warrant the inference that the master intended

that he should use it as he did or the inference that he was in fault in not knowing that he was likely to do so.'' [1 Labatte on Master and Servant, p. 63.]

But we find the evidence in its aspect most favorable to plaintiff does not warrant the application of these rules since there is substantial evidence to the effect that the foreman not only included the file among the necessary tools furnished plaintiff but instructed him in the use of the file as a chisel and in effect directed him so to use it in places that could not be conveniently reached by the larger chisels. No small chisel was provided and in the places just mentioned plaintiff was compelled to use the file to do the work assigned him. Being so instructed and circumstanced, plaintiff cannot be said to have voluntarily chosen an inappropriate tool when he had appropriate tools at hand and the inference is reasonable that he was doing the work with the tools and in the manner directed by the foreman.

But our conclusion that the evidence of plaintiff accuses defendant of negligence in giving him an improper and unsafe tool and in directing him to use it in a dangerous manner, of itself, does not compel or even support the further conclusion that such negligence was the proximate cause of the injury or sustained any causal relation to it. The burden is on plaintiff not only to show the existence of negligence of the master that could have caused the injury, but also to adduce proof from which a reasonable inference arises that such negligence did cause the injury.

''It is, therefore, a rule of universal law that in suits of this character it is necessary for the plaintiff to allege and prove a causal connection between the injury and the negligence of the master. The corollary of this rule is that if the accident might have resulted from more than one cause, for one of which the master is liable and for the other he is not liable, it is necessary for the plaintiff to prove, in the first

instance that the injury arose from the cause for which
the master is liable, for it is not the province of a
court or jury to speculate or guess from which cause
the accident happened.'' [Gorannson v. Mfg. Co.,
186 Mo. l. c. 307, and cases cited. See, also, Trigg v.
Ozark Lumber Co., 187 Mo. 227; Morgan v. Mining
Co., 136 Mo. App. 241; Byerly v. Light Co., 130 Mo.
App. 593; Fowler v. Elevator Co., 143 Mo. App. 422.]

We turn to the evidence of plaintiff to ascertain
whether it tends to show a causal connection between
the injury and the pleaded negligence, or discloses the
existence of two or more probable causes any one of
which might have been the sole cause of the injury and
for one of which i. e., the negligence averred, defend-
ant would be liable and for the others would not be
liable.

It was incumbent on plaintiff to show that a piece
of steel broken from the top end of the file by a blow
from the hammer flew into his eye and caused the in-
jury. The defect on which it based the charge of
negligence was the unsuitability of the file to the uses
of a chisel and that the unsuitability consisted of the
brittleness of that end of the file, a condition produced
by its high temper. It is not charged or contended
that the pointed end of the file which came in contact
with the concrete was highly tempered and brittle and
the evidence shows without contradiction that it was
no harder than the nose of a proper chisel. Conse-
quently the only defect in the tool was the proneness
of its brittel end to shiver and throw out particles of
steel under the blows of the hammer and plaintiff, to
be entitled to recover, must show a causal connection
between that defect and his injury. It is a physical
fact, of common knowledge, that when steel strikes
steel or flint, small particles of metal are likely to
fly off at the place of contact whether the temper of
the steel be high or medium. Especially is this so
when a glancing blow is struck. Every cutter of stone,

marble or granite experiences the frequency of the chipping of the points and noses of properly tempered chisels while in ordinary use. It was possible, to say the least, that if the point of the file should strike a flinty bit of gravel in the concrete, a particle of steel might be thrown upward from the point. And the same thing could have happened had a properly shaped and tempered chisel been used. All that may be said in favor of the theory that the particle which plaintiff claims struck him came from the top end of the file and not from the point is that the highly tempered end being more brittle than the point was more likely to throw out particles under the blows of the hammer.

But for either court or jury to say that the injurious missile came from the highly tempered end is a conclusion that can be reached only by guesswork, by making a conjectural and arbitrary choice between two reasonable but antagonistic probabilities. The fact that one probability possesses some advantages over the other would not make the inference of its truth any less the product of conjecture. If both are reasonable and if a belief in one would negative a belief in the other, it must follow logically that such belief could not be said to rest certainly on a foundation of evidentiary fact, but would be the result of a mere conjectural selection.

And further we find that the evidence of plaintiff leaves us entirely in the dark as to whether or not it was a piece of steel or a piece of concrete that caused the injury. The only fact that tends to negative the conclusion that the particle was not stone, is the fact testified to by plaintiff that the concrete had been softened by oil and grease. The only possible effect the action of oil could have had on the concrete would have been to destroy or impair its composite structure, to separate it into its component ingredients. It could not dissolve the gravel or stone in the structure

and we say that if the substance was hard enough to require the use of a hammer and chisel in digging it out, dust and bits of stone would fly in all directions from the chisel point, and it is just as reasonable to believe that the missile that struck plaintiff's eye was a bit of flint as that it was a bit of steel. We have before us a clear case of the failure of the plaintiff to adduce evidence connecting his injury with the negligence alleged to have been its cause.

A number of possible and probable causes are shown for only one of which defendant would be liable. The demurrer to the evidence should have been sustained.

The judgment is reversed and the cause remanded. All concur.