DALLAS CRADER, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 3, 1914.

1. **TRIAL PRACTICE: Conflicting Evidence: Question for Jury.** Where plaintiff testifies to the existence of facts warranting a recovery, the case is one for the jury, notwithstanding the witnesses introduced by defendant deny the existence of such facts.

2. **MASTER AND SERVANT: Furnishing Appliances: What Constitutes.** Where a master directs his servant to use tools belonging to a fellow servant, it furnishes him with such tools, within the rule requiring the master to exercise reasonable care to furnish his servant with reasonably safe appliances.

3. ————: **Injury to Servant: Defective Appliances: Sufficiency of Evidence.** In an action by a servant for injuries received from a defective tool, evidence *held* to support an inference that the tool causing the injury belonged to defendant.

4. ————: ————: ————: **Assumption of Risk.** Where a master is negligent in furnishing his servant with unsafe appliances, a recovery by the servant for injuries received from such appliances cannot be defeated on the ground that he assumed the risk of injury, since a servant does not assume

the risk of dangers arising from the negligence of the master, but assumes only those risks that are naturally incident to the employment, and inhere therein, after the master has performed his whole duty in the premises.

5. ———: ———: ———: **Simple Appliance.** A master who furnishes a servant with a pin maul, which contains defects that could not have been discovered by the servant by such an examination as he would be required to make to discover defects therein, cannot escape liability for injuries received by the servant from such defects on the ground that the maul was a common tool, to which the duty of inspection by the master did not apply, since the doctrine invoked is not applicable where the servant's means of knowledge is not equal to or greater than that of a master with respect to the condition of the tool.

6. ———: ———: ———: **Sufficiency of Evidence.** In an action by a servant whose eye was destroyed by a sliver which flew from a pin maul when it was struck with a sledge, evidence *held* sufficient to show that the sliver which destroyed plaintiff's eye came from the maul.

7. ———: ———: ———: **Improper Use of Appliance by Servant.** Where a master furnishes a tool which is reasonably safe for the purposes for which it is intended, and the servant negligently subjects it to a use for which it is not appropriate and which the master has not directly or impliedly authorized, whereby it is subjected to a strain beyond its capacity, and breaks, causing injury to the servant, such injury will be imputed to the negligence of the servant in improperly using the tool.

8. ———: ———: ———: **Sufficiency of Evidence.** In an action by a servant whose eye was destroyed by a sliver which flew from a pin maul when it was struck with a sledge, evidence *held* to be sufficient to show that the maul was intended to be used for the purpose for which plaintiff was using it at the time of the injury.

9. ———: ———: ———: ———. In an action by a servant whose eye was destroyed by a sliver which flew from a pin maul when it was struck with a sledge; *held*, under the evidence, that the question of whether the master was guilty of negligence in furnishing a defective appliance was for the jury.

10. **EVIDENCE: Expert Evidence.** In an action for injuries received from a sliver which flew from a pin maul when it was struck with a sledge, evidence of blacksmiths of long experience concerning their opinion as to the temper of the maul was admissible as expert evidence, since the jurors were not

so capable of forming a conclusion as to the proper temper of a maul as were the witnesses.

11. **MASTER AND SERVANT: Injury to Servant: Instructions: Errors Cured by Other Instructions.** In an action by a servant for injuries received from a defective appliance, the error of an instruction, in charging that the master was bound to furnish his servant with reasonably safe appliances, whereas the master's duty was merely to exercise ordinary care to that end, was cured by other portions of the instruction and by other instructions, which correctly declared the law.

12. **DAMAGES: Personal Injury: Excessiveness of Verdict.** An award of $6500 in favor of a man, 27 years of age, for the entire loss of the sight of one eye and the impairment of the sight of the other, was not excessive.

Appeal from Cape Girardeau Court of Common Pleas. —*Hon. R. G. Ranney*, Judge.

AFFIRMED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellant.

(1) The demurrer to the evidence should have been sustained, because: (a) There is an entire failure of proof that the pin maul was furnished to plaintiff by defendant. Blundell v. Mfg. Co., 189 Mo. 565; Smith v. Light & Power Co., 148 Mo. App. 572; Berry v. Railway, 124 Mo. 264. (b) But, assuming that it was furnished by defendant, the mere fact that it proved to be defective and plaintiff was injured, does not make out, for plaintiff, a prima-facie case of negligence on the part of defendant. Bowen v. Railway, 95 Mo. 268; Copeland v. Railroad, 175 Mo. 674; Klebe v. Distilling Co., 207 Mo. 489. (c) The risk of injury from a flying splinter from the pin maul was assumed by plaintiff. L'Houx v. Construction Co., 30 L. R. A. (N. S.) 800; Railway v. Phinney, 38 Ind. App. 546; Railway v. Ramp, 70 S. W. 568; Railway v. Weikel, 73 Kan. 763; Gillaspie v. Iron Works, 76 Kan. 70; Steinhauser v. Spraul, 127 Mo. 562; Mathis v. Stock Yards

Co., 185 Mo. 434; Harris v. Railroad, 146 Mo. App. 542. (d) The pin maul was a "common tool," to which the duty of inspection by the master does not extend. Wachsmuth v. Electric Crane Co., 118 Mich. 275; Miller v. Railway, 47 N. Y. Supp. 285; Garnett v. Bridge Co., 98 Fed. 192; O'Brien v. Railway, 82 S. W. 319; Lynn v. Sugar Ref. Co., 128 Iowa, 501; Golden v. Ellis, 104 Me. 177; Dompier v. Lewis, 131 Mich. 144; Koschman v. Ash, 98 Minn. 312; Demato v. Gas. Co., 67 Atl. 28; Martin v. Mfg. Co., 38 S. E. 876; Meyer v. Ladewig, 130 Wis. 566; Longpre v. Milling Co., 99 Pac. 131; Marich v. Ry. Co., 118 Pac. 764; 2 Neg. & Com. Cases Ann. 101; Mercer v. Railroad, 154 N. C. 399; 2 Neg. & Com. Cases Ann. 118; Fordyce v. Stafford, 57 Ark. 503; Dickenson v. Jenkins, 144 Mo. App. 136; Lowe v. Railroad, 165 Mo. App. 533; 1 Labatt on Master & Servant, Sec. 154, p. 331. (e) The evidence leaves it to conjecture whether plaintiff was injured by a sliver from the pin maul, or by one from the bolt which he was attempting to remove. Modlagl v. Foundry Co., 248 Mo. 587; Goransson v. Mfg. Co., 186 Mo. 307; Warner v. Railway, 178 Mo. 134; Trigg v. Land & Lbr. Co., 187 Mo. 227; McGrath v. Transit Co., 197 Mo. 104; Thornberry v. Mining Co., 126 Mo. App. 660; Smart v. Kansas City, 91 Mo. App. 586; Rogers v. Packing Co., 167 Mo. App. 49; Coin v. Lounge Co., 222 Mo. 508. (f) The pin maul was not designed nor intended for use as a punch, and plaintiff's use of it for such purpose was unauthorized and improper. York v. Railway, 117 Mo. 405. Holmes v. Brandenbaugh, 172 Mo. 53; Mathis v. Stock Yards Co., 185 Mo. 456; Jackson v. Elevator Co., 209 Mo. 506; Kelly v. Lawrence, 195 Mo. 87; Moran v. Brown, 27 Mo. App. 490; 1 Labatt on Master & Servant, sec. 26, pp. 59 and 63. (2) It was error to permit the witnesses, Bleckwendt and Hamilton, to give their opinions as to whether the pin maul was improperly tempered. Gutridge v. Railway,

181 App. 34

94 Mo. 472; Hurt v. Railway, 94 Mo. 260.   (3)   Instruction No. 1 given for plaintiff is erroneous for two reasons:   (a) It makes the master an insurer of the appliances furnished the servant.   Blanton v. Dold, 109 Mo. 64; Minnier v. Railway, 167 Mo. 99; Chrismer v. Tel. Co., 194 Mo. 189; Beebe v. Transit Co., 206 Mo. 419; Brown v. Lnd. & Lbr. Co., 65 Mo. App. 162; Bennett v. Lbr. Co., 116 Mo. App. 699; Henson v. Stave Co., 151 Mo. App. 244.   (b) It assumes that the pin maul was furnished by the defendant, in the absence of any evidence that it was so furnished.   Smith v. Light & Power Co., 148 Mo. App. 582.   (4)   The verdict of the jury is excessive.   Lemser v. Mfg. Co., 70 Mo. App. 209; Cook v. Railway, 94 Mo. App. 425; Orscheln v. Scott, 106 Mo. App. 583; Kielty v. Construction Co., 121 Mo. App. 58; Goetz v. Ambs, 22 Mo. 170; Bragg v. Railway, 192 Mo. 365.

*Thomas F. Lane, H. E. Alexander* and *W. N. Davis* for respondent.

(1)   The demurrer to the evidence was properly overruled because:   (a) The uncontradicted evidence shows that defendant furnished the pin maul for use by plaintiff.   (b) The evidence tends strongly to prove that the pin maul was the property of defendant. (c) If not owned by defendant, yet the plaintiff was directed to use the pin maul.   (d) The duty of a master to furnish his servant with reasonably safe appliances is not affected by the fact that an appliance which he supplies to his servants is owned by third persons: Clark v. Union Iron & Foundry Co., 234 Mo. 436; Sharpley v. Wright, 205 Pa. St. 253; 3 Labatt's Master & Servant, Sec. 1074.   (e)   Where the evidence tends to show that the instrument was the property of, or furnished by, defendant, or, that the servant was directed to use it in the conduct of the master's business, and that it was not properly tempered, causing an in-

jury, and, that the master knew or was chargeable with knowledge of defects, a prima-facie case for the jury is made: Buckner v. Stockyards, 221 Mo. 700. (f) Under the Missouri doctrine that a servant never assumes the risk of the master's negligence, a servant, in the exercise of due care, may recover for injuries caused by splinters flying from hammers, chisels, punches and other similar tools, where the master knew of the defect or was chargeable with knowledge thereof: Duerst v. St. Louis Stamping Co., 163 Mo. 607; Johnson v. Railroad, 96 Mo. 340; Franklin v. Railroad, 97 Mo. App. 473; Robbins v. Big Circle Mining Co., 105 Mo. App. 78; Buckner v. Stockyards, 221 Mo. 700; Minnier v. Railway, 167 Mo. 99. (g) A foreman in charge of laborers is a vice-principal, and, where he directs a laborer to use defective appliances, and injury results therefrom, the master is liable: Sullivan v. Railroad, 107 Mo. 66; Burkard v. A. Leschen & Sons Rope Co., 217 Mo. 466. (h) Though the employee, so injured, knew of the defect in the appliance, yet did not know of the danger to which it subjected him, but the foreman did know it or could have known it had he done his duty, the master is liable: Sullivan v. Railroad, 107 Mo. 66; Booth v. Railroad, 76 Mo. App. 516; Robbins v. Big Circle Mining Co., 105 Mo. App. 78; Minnier v. Railroad, 167 Mo. 120. (i) The master may be chargeable with negligence, in failing to ascertain a danger, where the servant is not: Clark v. Union Iron & Foundry Co., 234 Mo. 436; Clow v. Boltz, 92 Fed. 572; 34 C. C. A. 550; Railway v. Jaroi, 53 Fed. 68; 3 C. C. A. 436. (j) The servant may assume that the master has performed his duty in furnishing reasonably safe instrumentalities: Goransson v. Mfg. Co., 186 Mo. 300; Love v. Mfg. Co., 160 Mo. 608; Robbins v. Big Circle Mining Co., 105 Mo. App. 78. (k) Negligent ignorance is equivalent to knowledge: O'Mellia v. Railroad, 115 Mo. 205; Hamilton v. Mining Co., 108 Mo. 364; Hester v. Jacob Dold Packing Co., 84 Mo.

App. 451. (1) It is the master's duty to inspect and keep appliances and tools in a reasonably safe condition for the use of his servants: Deckerd v. Wabash, 111 Mo. App. 117. (m) The master cannot absolve himself from liability where he is guilty of negligence in furnishing an unsafe tool, even though it be a common tool: Warner v. Railroad, 62 Mo. App. 184. (n) There is no evidence, either positive or inferential, that plaintiff was injured by a sliver from the bolt that he was attempting to remove. The positive and inferential evidence is, that he was injured by a sliver from the pin maul. (o) The evidence almost conclusively shows that the pin maul was designed, among other purposes, and used for drifting bolts. The evidence in this case shows that it was especially adapted and used for removing this extraordinarily tight bolt. (2) The evidence of witnesses Bleckwendt and Hamilton, was properly admitted, to show that the pin maul was not properly tempered: Goransson v. Mfg. Co., 186 Mo. 300; Duerst v. Stamping Co., 163 Mo. 607; Franklin v. Railroad, 97 Mo. App. 473; Johnson v. Railroad, 96 Mo. 341. (3) Instruction No. 1 for plaintiff correctly declares the law of this State, for the following reasons: (a) It goes no further than imposing the duty on the master to furnish reasonably safe appliances or tools. This instruction has been approved on similar facts in Duerst v. Stamping Co., 163 Mo. 607; Goransson v. Mfg. Co., 186 Mo. 300; Love v. Mfg. Co., 160 Mo. 608; Robbins v. Big Circle Mining Co., 105 Mo. App. 78; Pendergrass v. Railroad, 179 Mo. App. 517. (b) If there is error in plaintiff's instruction No. 1, it is cured by defendant's instruction No. 4, which advises the jury that the master is not an insurer of the appliances furnished his servant, and, that the master is required to use only ordinary care in furnishing appliances which are reasonably safe: Deckerd v. Railroad, 111 Mo. App. 117; Pendergrass v. Railroad, supra. (c) The instruction expressly

requires the jury to find that the pin maul was furnished by defendant, and as there was evidence to support it, it was properly submitted to the jury. (4) The verdict of the jury was not excessive: Johnson v. Railroad, 96 Mo. 341; Van Hul v. Great Northern R. Co., 90 Minn. 329; Galveston R. Co. v. Whisenhunt, 36 Tex. Civil App. 135.

ALLEN, J.—This is an action for personal injuries sustained by plaintiff while in the employ of defendant railroad company. Plaintiff recovered and the defendant prosecutes the appeal.

At the time of plaintiff's injuries, to-wit, July 25, 1911, he was working for the defendant as a car repairer, at its car shops at Chaffee, Missouri. It appears that he had previously worked for the defendant in a similar capacity, but had been out of its employ for some years prior to May 22, 1911. After again entering defendant's employ, on the last mentioned date, it seems that he was not in the car department until about seven and one-half days before he was injured; that after being placed in the car department, he was engaged for six days in filling oil boxes of cars, and that a day and a half before he was injured, he began work as a car repairer.

When injured, plaintiff and a fellow workman, named Moit, were at work beneath a freight car doing repair work upon the same. It appears that plaintiff was endeavoring to drive an old bolt out of a beam beneath the car, which bolt had been broken off about even or "flush" with the beam. He was working with a hammer known as a pin maul. The latter, it seems, weighed about three and one-half pounds, had a "hammer head" upon one side of the "eye" into which the handle fitted, and upon the other side thereof a sort of pin tapering toward the end. In order to force the bolt out of the beam, plaintiff placed the pointed end of this pin maul against it, and asked Moit to strike

the face of the pin maul with a sledge. Moit struck the pin maul two or three blows, when a chip or piece of steel flew into plaintiff's right eye, destroying the sight thereof, and necessitating its removal.

The negligence with which defendant is charged is that it furnished plaintiff with a pin maul with which to perform his work, which was defective and dangerous, in that it was improperly tempered and on that account brittle and fragile, and dangerous for use, when defendant knew, or by the exercise of ordinary care would have known, of such defect or insufficiency therein and of the dangerous character thereof.

Two experienced blacksmiths testified as experts in plaintiff's behalf. Both of them testified that the pin maul was improperly tempered, and too hard, rendering it liable to chip off or shiver, causing pieces to fly therefrom when used. One of them, who had tested this particular hammer before the trial, stated that it was too hard for any use at all, except for cutting granite, and then could only be used with a light stroke or it would break; that it was altogether too hard for punching bolts, driving nails or anything of that sort. One of these witnesses also testified that one could not tell whether the instrument was properly tempered or not by looking at it, but that a simple test, such as using a file thereon, would reveal the same.

It appears that the pin maul was somewhat chipped from use, before plaintiff received his injury; but from the evidence its appearance seems not to have been such as to excite suspicion that it was dangerous for use. Plaintiff and his fellow workman had but little space within which to work beneath the car. They were attempting to drive this bolt upward, out of the beam in question. Plaintiff testified that, owing to lack of room, Moit was able to draw the sledge back but a short distance, perhaps from eighteen inches to two feet; plaintiff saying that he could not tell just how long the stroke was. Moit testified that the length of

the stroke was only about sixteen inches. Both testified that the blow was a straight one upon the face of the pin maul, and not a slanting blow. The testimony was that neither the face of the sledge, nor the face of the pin maul which received the blow, showed evidence of any fresh break or chipping off. No witness could say whether any chip or sliver came from the bolt; but there was a fresh break in the small end of the pin maul which was being held against the bolt, showing that it had chipped off or shivered.

Appellant earnestly contends that its demurrer to the evidence should have been sustained; that plaintiff wholly failed to make out a case entitling him to go to the jury, and that the trial court should have peremptorily directed a verdict for defendant.

I. The first reason assigned by appellant, why, as it says, its demurrer to the evidence should have been sustained, is that there was, as it is contended, an entire failure of proof that the pin maul in question was furnished plaintiff by defendant. The testimony respecting this question shows that the particular pin maul which plaintiff was using at the time was taken out of a box of tools belonging to Moit, plaintiff's fellow workman. Plaintiff testified that on the morning of the day preceding the accident, he was directed by the foreman, one Lundy, to go to work repairing cars; that plaintiff had no tools, and that he was told by the foreman to work with Moit and that Moit had the tools to work with. It appears that Moit had a box of tools of his own which he had purchased from one Rumley, and it is said that this pin maul was among the tools which he thus received from the latter. Moit testified that the maul did not belong to him. He undertook to testify to what Rumley had said as to where the maul came from, but such testimony was excluded. The maul, however, was exactly like others

which were furnished by the defendant for the use of its employees.

It seems that the tools used by defendants' employees were regularly kept in a certain car, called the carpenters' car, which was kept standing at a particular place for this purpose; that Moit kept there the box of tools which he had purchased from Rumley, and in which it seems was this particular maul; that upon the morning when plaintiff began this repair work the maul was thus among Moit's tools, and that plaintiff used it in such ways as he found convenient, or as he thought suitable for the work in hand, up until the time of his injury.

It is argued that the evidence fell short of showing where the pin maul came from; that it did not appear that it was owned by the defendant company or that it was furnished to plaintiff with which to do his work. This argument might be very persuasive were it not for the fact that plaintiff testified very positively that on the morning before his injury, when he was put to doing repair work upon cars, and had no tools therefor, he was told by the foreman to go to Moit and use Moit's tools for such purpose. This, in point of fact, was not denied by the foreman, for the latter in testifying stated that he could not recall what instructions he gave to the plaintiff, at the time in question. But had it been denied by the foreman, it would still have been a question for the jury. If defendant's foreman directed plaintiff to use such tools as Moit had, this was in fact a furnishing of such tools to plaintiff for his work. It matters not whether defendant owned the instrument in question or not, nor where it originally came from, if defendant furnished it to plaintiff with which to do his work. There is ample evidence that defendant did thus furnish it to plaintiff. For defendant's foreman to direct plaintiff to get from Moit the tools with which he was to work, was in all respects tantamount to supplying him with such tools.

The evidence, as a whole, tends very strongly to support the inference that this particular maul belonged to the railroad company. It was a maul precisely like others used by defendant at its car shops and supplied to its workmen; and there was evidence that this particular maul had been used by other employees of defendant. Moit stated that he did not own it, though he had been keeping it, for his use, among other tools which he kept in the tool car. But, however this may be, it is quite clear that the tool in question must be regarded as having been furnished and supplied to the plaintiff with which to perform the work required of him by the ·master; and it is wholly immaterial who actually owned it.

II. Appellant says that the risk of injury from a flying splinter from the pin maul was one assumed by plaintiff. This, however, can not be true if there is any substantial evidence of negligence on the part of the defendant with respect to furnishing plaintiff with reasonably safe appliances with which to do his work. Where negligence is shown on the part of the master, a recovery can not be denied the servant on the ground of assumption of risk, though he may be precluded by reason of his contributory negligence. It is well settled that a servant does not assume the risks of perils and dangers arising from the negligence of the master, but assumes only those risks which are naturally incident to the employment, and which inhere therein, after the master has performed his whole duty in the premises. [See Jewell v. Bolt & Nut Co., 231 Mo. 176, 132 S. W. 703; Jarrell v. Coal Co., 154 Mo. App. 552, 136 S. W. 754; Bradley v. Coal Co., 167 Mo. App. 177, 151 S. W. 180; Dales v. Railroad, 169 Mo. App. 183, 152 S. W. 401; Bliesner v. Distilling Co., 174 Mo. App. 139, 157 S. W. 980, and further authorities cited.]

III. It is also urged that the pin maul was a common tool, to which the duty of inspection by the master does not apply. But we are not impressed with this argument, in the particular case, for the reason that there was a defect in the tool here in question, if plaintiff's evidence be true, which plaintiff could not have discovered by such an examination thereof as he would be required to make to discover defects or insufficiencies therein. The doctrine which appellant seeks to invoke has here no application. There are many cases in which recovery has been denied the servant for injuries received by reason of defects or insufficiencies in common tools; as where the servant's means of knowledge was equal to or greater than that of the master with respect to the condition of the tool, or where the servant was charged with a duty to repair. But obviously the instant case does not fall within the principles governing such cases.

IV. It is further urged that the evidence leaves it to conjecture as to whether plaintiff was injured by a sliver from the pin maul or by one from the bolt which he was attempting to remove from the beam. [See Modlagl v. Iron & Foundry Co., 248 Mo. 587, 154 S. W. 752.] There was evidence of a fresh break in this end of the pin maul, showing that a piece or pieces had chipped off therefrom. On the other hand there is no evidence that anything chipped or flew from the bolt which plaintiff was attempting to remove. The latter was broken off so that it was "flush" with the surface of the beam, and when plaintiff was injured the pin maul had been placed directly upon this end of the bolt. There is nothing to justify an inference that anything flew from the bolt itself. The piece of metal which flew into plaintiff's eye, which is said was of steel, had been preserved and was in evidence before the jury. And upon the whole the evidence was ample to justify a finding that this piece of metal came from

the small end of the pin maul, which was chipped or shivered.

V.  The most serious contention, however, of appellant is that the pin maul was not designed or intended to be used as a punch for removing bolts; and that plaintiff in attempting to drive out a bolt with it, as he did, utilized it for a purpose for which it was not furnished him, and that his injury resulted from such negligent and improper use thereof.

It is quite true that the master is not liable for the negligent use by a servant of an appliance furnished him, nor for injuries resulting proximately from the use of such an appliance for a purpose for which it was not intended or supplied him.  That is to say, if a master furnishes a tool which is reasonably safe for the purposes for which it is intended, and the servant negligently subjects it to a use for which it is not appropriate, and which the master has not directly or impliedly authorized the servant to do, whereby it is subjected to a strain beyond its capacity and breaks, causing injury to the servant, such injury will be imputed to the negligence of the servant in improperly using the tool.  [See Moran v. Brown, 27 Mo. App. 487; Rogers v. Packing Co., 167 Mo. App. 55, 150 S. W. 556.]

Touching this matter, Moit, plaintiff's colaborer, testified that driving bolts was not the proper use for the pin maul, though it was frequently thus used. Defendant's foreman testified that the instrument was not designed or intended for such purpose, but ''for driving spikes, lag screws and like work of that kind.'' However, plaintiff testified, in effect, that it was an appropriate instrument to be used for such purpose; that when he had previously worked with the company, such pin mauls were commonly used for removing bolts as well as for any other purposes for which they appeared to be suitable.  Upon this occasion, he had been

engaged in this particular work for but a day and a half before receiving his injury, and during such time it appears that he made use of the pin maul in such ways (including driving out bolts) as he had done when previously employed by defendant in the same character of work, and as he had seen such instruments used by other workmen.

There can be no doubt, we think, that the evidence was such as to make this question one for the jury; for it tends to reveal the fact that these pin mauls were commonly used for purposes such as driving out bolts, though it may be that they were intended primarily for other purposes, as defendant contends. Plaintiff's testimony, coupled with the other facts and circumstances in evidence, makes the question one, we think, which can not be passed upon, as a matter of law; for, under the evidence, we could not say, as a conclusion of law, that plaintiff's injury was the result of an improper use of the tool. It would appear from plaintiff's evidence that such a pin maul was reasonably appropriate for use in driving out bolts; that it might be safely used for such purpose provided it was properly tempered; and that it was provided by defendant for work of this character as well as for other purposes. There is evidence that this particular pin maul, however, was so tempered that it was too brittle for any use to which plaintiff might have put it. It seems that the blow, which caused it to chip or shiver, was struck by swinging the sledge only some sixteen inches; and it may be inferred that it was not of sufficient force to have caused a steel instrument of this character to shiver or break off, provided the latter was tempered so as to be reasonably safe for use as a tool. We think that the matter was one to be referred to the jury; and it was so referred by an instruction given at defendant's request.

VI. A careful review of the evidence has convinced us that the ruling of the trial court upon defendant's demurrer was proper. The evidence tends to establish the negligence with which defendant is charged. There can be no doubt that to furnish the servant with a tool as hard and brittle as plaintiff's evidence tends to show this pin maul was, is a breach of the master's duty owing to the servant. Plaintiff's evidence indicates that the pin maul was so fragile as to be highly dangerous for any use to which plaintiff might have put it; that this, however, could not be discerned by looking at it, and hence was not readily discoverable by plaintiff; whereas a simple test by defendant would have revealed the dangerous character of the instrument. Such being the case, there can be no doubt, we think, that the evidence was sufficient, to make a case entitling plaintiff to go to the jury. [See Johnson v. Railway Co., 96 Mo. 340, 9 S. W. 790; Duerst v. Stamping Co., 163 Mo. 607, 63 S. W. 827; Goransson v. Manufacturing Co., 186 Mo. 300, 85 S. W. 338; Franklin v. Railway Co., 97 Mo. App. 473, 71 S. W. 540; Robbins v. Mining Co., 105 Mo. App. 78, 79 S. W. 470; Dales v. Railroad Co., supra.]

VII. It is urged that it was error for the trial court to permit the two blacksmiths, over defendant's objections, to give in evidence their opinions respecting the temper of the pin maul. As to this defendant relies upon Guthridge v. Railway, 94 Mo. l. c. 472, 473, 7 S. W. 476; and Hurt v. Railway, 94 Mo. l. c. 260, 7 S. W. 1. But we think these cases are not authority for appellant's contention. In the former, it was said that "there was no fact in the case which, for its solution, called for scientific or professional knowledge, or for any peculiar knowledge or experience;" that "it was, therefore, not a case for expert evidence." In the the latter case it was held that a witness, not testifying as an expert, but merely as to matters with

which the jury may well be supposed to be as conversant as himself, and as capable of drawing a correct conclusion, should not be allowed to give an opinion.

The witnesses here were clearly experts, and qualified as such. And it cannot be doubted that the subject was one calling for expert testimony, for it cannot be said that the jurors were as capable of forming a conclusion as to the proper temper of a maul as blacksmiths of long experience and possessed of practical knowledge respecting such matter. [See Johnson v. Railway Co., supra.]

VIII. The first instruction given for plaintiff is assailed upon the ground that it makes the master an insurer of the appliance furnished to the servant. This is predicated upon the wording of the earlier part of the instruction, which told the jury that it was the duty of the defendant to furnish its employees with mauls and appliances that were reasonably safe, etc.; whereas, defendant's duty was only to exercise ordinary care to that end. This assignment of error, however, is fully covered by what we said in Pendegrass v. Railway Co., 179 Mo. App. 517, 162 S. W. 712, where the identical question was under consideration. Here, as there, other portions of the instruction, as well as other instructions given in the case, fully cured the error, if any, complained of. [See also Girard v. Coal & Coke Co., 207 Mo. 242, 105 S. W. 767.]

IX. The only remaining assignment of error which we need to notice pertains to the amount of the verdict, to-wit, $6500. It is urged that it is grossly excessive, and so much so as to indicate that it was the result of passion and prejudice, and should not be permitted to stand.

At the time of plaintiff's injury he was twenty-seven years of age, of good health and vigor; and, according to the evidence adduced in his behalf, his

eyesight was good.  As a result of his injury, he lost his right eye entirely; and he testified that the sight of his left eye had been thereby much impaired.  He testified that he suffered great pain, both before and after the operation by which his right eye was removed; that he continued to suffer pain and aching in and about the socket from which the right eye had been removed, and in his left eye as well, even down to the time of the trial.  While there was evidence of past loss of earnings, plaintiff's instruction given on the measure of damages did not include any recovery for loss of earnings either in the past or the future.

A consideration of this assignment of error has led us to the conclusion that we ought not to interfere with the jury's verdict.  It is true the verdict is rather large, but it does not appear to be so grossly excessive as to warrant us in saying that it appears upon its face to be the result of passion and prejudice.  And whatever may be said of our right to compel a remittitur, in a proper case, we feel that it does not here so clearly appear that this verdict is excessive as to call for the exercise of such power.  In view of the fact that the plaintiff has lost one eye, and that there is evidence that the sight of his other eye has been greatly impaired by reason of his injury, we think that the jury's verdict cannot well be said to be beyond all reasonable bounds, calling for interference by this court.

For the reasons given above the judgment of the circuit court is affirmed.  It is so ordered.  *Reynolds, P. J.,* and *Nortoni, J.,* concur.