LAWRENCE ROGERS, Respondent, v. HAMMOND PACKING CO., Appellant.

Kansas City Court of Appeals, May 18, 1914.

1. **MASTER AND SERVANT:** Negligence: Risks: Causal Connection Between Negligence and Injury. In a suit against the master for negligence in furnishing a servant a defective or unfit tool with which to work, it is necessary to allege and

prove a causal connection between the injury and the negligence of the master.

2. ———: ———: ———: **Where There Are Several Possible Causes.** If the injury might have resulted from more than one cause, for only one of which the master is liable and the others he is not, it is necessary for the servant to prove that the injury arose from the cause for which the master is liable. Neither the court nor the jury can guess at which cause produced the injury.

Appeal from Buchanan Circuit Court.—*Hon. Charles H. Mayer*, Judge.

REVERSED.

*William E. Stringfellow* for appellant.

*B. J. Casteel* and *John D. McNeely* for respondent.

TRIMBLE, J.—Plaintiff sues for the loss of an eye destroyed by an unknown flying particle striking it while he was engaged in chipping out and removing the concrete from under the frame and base of a very large and heavy ice manufacturing machine. This concrete formed the bed on which the machine, including a large flywheel eighteen feet in diameter, rested, and in which its supports were embedded. Owing to years of use, the vibration of the machinery and possibly the dripping of oil thereon in some places, this concrete had shrunk or sunk down so as to render the machine less stable. It was desired to chip out a sufficient amount of the top of this concrete so that melted zinc could be run into the place of the concrete thus chipped out. Melted zinc could be forced more compactly into place under the machine than concrete, and when it cooled would not shrink but would maintain a close contact with the base of the machine and thus render the ponderous machinery practically stable. Most of this concrete was exceedingly hard but in the places

where oil from the machinery had constantly dripped the concrete was soft and rotten.

The concrete was chipped out by means of hammers and chisels. A portion of the concrete was between the flywheel and the frame of the machine, so that a workman engaged in chipping it out would have a more or less restricted place in which to work. Consequently, on account of the inaccessibility of some portions of the concrete, a shorter chisel could be used to better advantage, or would have to be used, than in others.

The charge in the petition is that defendant furnished plaintiff a piece of an old file to be used as a short chisel in digging out the places which could not be reached by the longer chisel; that such file was unfit for use as a chisel because, owing to its extremely high temper, it was very brittle and, when struck by the hammer, particles of steel would fly therefrom greatly endangering the workman; that this unfitness of the file for use as a chisel was known to defendant and unknown to plaintiff and could not be discovered by the exercise of ordinary care on plaintiff's part; and that while using said defective tool, under orders from defendant, a piece of said file broke off striking plaintiff in the eye injuring it so badly that it had to be removed.

The answer was a general denial together with pleas of assumed risk and contributory negligence.

The case was before this court at the October term, 1912, on defendant's appeal from a judgment upon a jury's verdict in plaintiff's favor. [Rogers v. Hammond Packing Co., 167 Mo. App. 49.] By reference to the opinion rendered at that time by JOHNSON, J., speaking for this court, it will be observed that this court held then that, although plaintiff's evidence was strongly contradicted, yet there was substantial evidence that the foreman gave the plaintiff the file as one of the necessary tools for use in the work and in-

structed him in its use, that plaintiff was using it as instructed and did not know of the danger of striking its brittle end with a steel hammer, and that the file, on account of its temper, was not a reasonably safe tool .for the work in which it was directed to be used. [See 167 Mo. App. 55.]    And on page 56 the court, after holding that the mere fact that a chisel was included .in the tools furnished would be insufficient to establish negligence, says that there was substantial evidence .tending to show that the foreman not only included the file among the necessary tools furnished, but instructed him in the use of the file as a chisel and in effect directed him to use it in places that could not be conveniently reached by the longer tools.    The case was reversed and remanded, however, because the evidence did not support the further conclusion that such negligence in furnishining a tool known to be unfit was the cause of the injury or sustained any causal relation to it.    While no reason is given for remanding the cause for a new trial, evidently it was because the court thought from the state of the evidence that, if it had been more thoroughly developed, a case would have been made.

At any rate the case has been retried, another jury has found in plaintiff's favor, and the case is again before us for consideration.

It is conceded that a file is an unfit and an unsafe tool for use as a chisel on account of its being so highly tempered that, when struck by a hammer, particles of steel will fly with great force from the end receiving the blow.    It is also apparent that this property or character of files was well known to defendant.    And there is sufficient evidence tending to show that plaintiff did not know of it.    He testified that he did not. He is an Italian, calls himself a common laborer, and his previous employments, his use of language—at least the English language—and his ability to understand it and make himself understood, does not show

him to be anything else, nor does the evidence. And there is nothing to show that knowledge of the brittle qualities of a file, or of its tendency to throw off par-ticles when struck, had ever been acquired by him either by experience or through information from others.

Defendant contends that under the evidence no case has been made. This contention is based upon several grounds. First, that no file was furnished at all for any purpose, but that even if a file was among the tools supplied by defendant there is no evidence that it was supplied for use *as a chisel and to be struck by a hammer*. Second, that even if a file was so furnished and used, still it is just as probable, if not more so, that the injury was caused by a flying piece of concrete as by a piece of metal, and that, even if it was a piece of metal, it is problematical whether said piece of metal came from the file or from the head of the hammer. Consequently the jury could only guess or speculate as to what caused the injury.

Taking up the first contention above noted that no file was furnished at all for any purpose nor used upon the job, but if so, was not furnished as a chisel, we recognize the fact that plaintiff is alone in his testimony that a file was furnished and is contradicted by the foreman and all the workmen in the place on this point. But a careful examination of plaintiff's evidence and of all the other facts and circumstances shown to have existed, discloses that there was at least some substantial evidence that a file was furnished and that it was furnished for use as a chisel and to be used by striking it with a hammer. The questions whether a file was furnished and whether it was furnished to be used as a chisel were very clearly and specifically submitted to the jury by instructions on both sides, and the jury was told that if they found that defendant did not furnish plaintiff with a file to be used as a chisel and struck with a hammer, then

plaintiff had no case. So that the jury by its verdict found that a file was furnished to be used as a chisel, and we cannot say there was no evidence to support that finding.

The second contention, namely, that the evidence does not show what caused the injury, and consequently, the jury were left to merely guess whether the particle that struck plaintiff in the eye came from the head of the file or elsewhere is of much force and raises the great difficulty which plaintiff must overcome before he is entitled to a recovery. It must be borne in mind that the piece of broken file plaintiff claims to have been using as a chisel was not too highly tempered at the cutting end but was only so at the top or hammered end; the way files are made, the point at the end is not tempered any harder than a properly tempered chisel, but the part back next to the handle where the filing is done is much more highly tempered and is too brittle to be struck with a hammer. It must also be remembered that plaintiff's claim is that a piece of steel broken from the *top* end of the file struck and put out his eye. The defect claimed is that the file was unfit for use as a chisel and that the unfitness was in the top or hammer-end of the chisel on account of the brittleness of that end caused by its high temper. It was in evidence, and undisputed, and in fact it is common knowledge, that when concrete, stone, or any substance of flinty composition, is being chipped by a chisel, particles of the substance chipped fly with great force in every direction and so also do particles from the edge of the chisel itself however suitable and properly tempered it may be. Consequently if the particle, whether of concrete or metal, which struck plaintiff's eye came from the cutting end of the chisel, plaintiff has no case. It was necessary, therefore, in order to support a recovery, for plaintiff to show in some way that the flying particle came from the top or hammered end of the file. And if the evi-

dence is in such state as to leave it a matter of guess work as to which end the particle came from, then plaintiff's case must fail. [Rogers v. Hammond Packing Co., 167 Mo. App. 49 l. c. 57 and cases there cited.]

Upon this question as to which end of the chisel the evidence shows that the particle came from, there is this to be said: Plaintiff testified that, at the time he was hurt, he was chipping out cement five inches under the base of the machine; that the crack in which he was working, that is, the space between the base of the machine down to the concrete left in place, was one-half inch; that he was using as a chisel a file twelve inches long and the end he was striking with a hammer was four inches above the floor. Now, while we cannot consider the fact, if it be a fact, that plaintiff testified at the former trial that the concrete being chipped was three inches under the machine instead of five as he now claims (because what he testified to on this point in the former trial is not in the record before us now), yet we can consider whether his statement that it was five inches under is correct *when compared with the other distances given by him.* He says the point of the chisel was *five* inches under the machine in a horizontal crack *one-half inch* wide and that the top end of the chisel, twelve inches from the cutting end, was *four* inches above the floor. This could not possibly be. As a mathematical proposition if he had his chisel five inches under the machine in a crack one-half inch wide, the top end of his one foot chisel would be about one and two tenths inches instead of four inches from the floor. Defendant's evidence is all to the effect that the chipping being done at the point where plaintiff got hurt was only about three inches under the machine and that the crack was wider than plaintiff made it. It is true by accepting defendant's evidence as to the width of the crack and disbelieving plaintiff's evidence on that point a state of facts can be pieced out which will show that it is al-

most possible, though not quite, for plaintiff to have been chipping five inches under the machine with his chisel at the angle he says it was. But even if a state of facts can thus be pieced out by believing portions of the evidence on each side and disbelieving other portions in order to show that plaintiff was cutting concrete that far under the machine, still such piecing of the evidence greatly increases the probability and renders certain the possibility that the injury might have come from that source. If it is reasonably possible or probable that particles, either of concrete or metal, from the cutting end of the chisel reached plaintiff's face then the cause of the injury has not been removed from the field of conjecture. Plaintiff did not see, nor did any one find, the particle that penetrated his eye. No one knows whether it was steel or concrete. His eye was injured by one of four possible causes, 1, by a piece of concrete, or 2, by a piece of metal from the point of the chisel, or 3, by a piece of metal from the head of the hammer, or 4, by a piece of steel from the head of the file. Now, in order for plaintiff to establish his case, there must be some evidence showing with reasonable certainty that the injury was caused by the piece last named. It must not be left to guesswork. As long as the evidence shows that it is as reasonably possible for the injury to have arisen from either of the first three things as from the last one, then the matter of selecting the last as the cause is not a determination thereof from evidentiary facts, but is the result of a guess or arbitrary chocie. Plaintiff, in order to remove the first two things above mentioned from the field of possible causes, claims that the base of the machine rendered it impossible for the particle to have come from the cutting end of the chisel. He therefore puts the chisel five inches under the machine. But the facts show that it was not that far under, or if it was, that the aperture was sufficiently wide to permit the flying particles of concrete,

driven with great force as they were, to go, either directly or by rebounding, into plaintiff's eye. So whether the chisel was five inches or only three inches under the machine it was still possible and in fact reasonably certain that particles would fly or rebound from thereunder and strike plaintiff in the face. Consequently the presence of the machine does not remove the first two things above mentioned from among the possible and reasonable causes of the injury. Plaintiff's hypothesis is that the particle doing the injury could not have come, and therefore did not come, from under the machine, consequently he says it came from the head of the file. Logically this is necessarily his hypothesis for the reason that where there are a number of causes that are likely to produce a certain effect and an hypothesis is relied upon to prove that a certain one of those causes produced that effect, that hypothesis must be one, which, if true, will necessarily, and not probably, produce the effect. Otherwise it will still remain a guess as to whether that particular cause produced the given result.

Since, therefore, the evidence still shows that there are at least two, and perhaps three or four reasonable causes for the injury, and that if one caused it the other did not, and could not have had anything to do with it, plaintiff is in no better situation under the evidence at this trial than he was at the last. The remarks of JOHNSON, J., found on page 58 of the former decision herein, apply at this point with great force and clearness, but they need not be repeated. Suffice it to say that, under all the evidence, it is only "by making an arbitrary and conjectural choice between various reasonable but antagonistic probable causes," (for only one of which defendant is liable); that anyone could say that the particle came from the highly tempered end of the file and not elsewhere. When this is the situation plaintiff's case must fail. This is unfortunate for plaintiff but such is the law.

In a case where the injury might have resulted from one of several causes, for one of which defendant is liable and for the others he is not liable, it is incumbent upon plaintiff to prove his case by showing that the injury arose from that cause for which defendant is liable. Of course ordinarily a plaintiff proves his case by proving a state of facts or a situation from which the cause of the injury can reasonably and legally be inferred, if that cause be one for which defendant is liable. But this can hardly apply with strictness when there are several different and reasonably probable causes and defendant is liable for only one of them. Or, if it does apply, the state of facts relied upon to produce the legal inference of the right cause must necessarily raise the inference and no other. If the state of facts so relied upon to show the right cause is such as to still leave it conjectural whether that or some other cause (for which no liability exists) produced the injury, then the case is not proved, and no recovery can be had. Many authorities could be cited in support of the proposition announced. In the case of Goransson v. Ritter-Conley Mfg. Co., 186 Mo. 300, l. c. 307, the Supreme Court say:

"It is, therefore, a rule of universal law that in suits of this character it is necessary for the plaintiff to allege and prove a causal connection between the injury and the negligence of the master. The corollary of this rule is that if the accident might have resulted from more than one cause, for one of which the master is liable and for the other he is not liable, it is necessary for the plaintiff to prove, in the first instance, that the injury arose from the cause for which the master is liable, for it is not the province of a court or jury to speculate or guess from which cause the accident happened. [Railroad v. Nelms, 83 Ga. 70; Searles v. Railroad, 101 N. Y. 661; Dobbins v. Brown, 119 N. Y. l. c. 193; Peirce v. Kile, 80 Fed. l. c. 867; Mining Co. v. Kitts, 42 Mich. l. c. 37; Priest v. Nichols, 116

Mass. 401; Epperson v. Telegraph Cable Co., 155 Mo. 346; Wood on Law Master and Servant, sec. 382.]''

The case of Modlagl v. Iron & Foundry Co., 248 Mo. 587, was a suit for injury to an eye from a flying piece of metal caused by chipping rivet-heads off with a chisel alleged and shown to have been defective. The judgment in the trial court was for defendant and this was affirmed by the Supreme Court, and on page 605 of that decsion the court uses this language:

''There is a third and final reason why the judgment of the circuit court should be affirmed, and that is, the evidence tends no more to show that the piece of metal which struck and destroyed plaintiff's eye came from the chisel, than that it came from the rivets which were being chipped off by the use of the chisel.''

If the injurious piece of metal came from a rivet-head, then this was one of the risks incident to the employment. So, in the case at bar, if the injury was caused by a particle, either of concrete or metal, coming from the cutting end of the chisel, then this was one of the risks incident to plaintiff's employment, and, in that event, defendant would not be liable. And since the evidence is such that one can only guess at where it came from, the causal connection between plaintiff's injury and the negligence charged has not been proved. Defendant's demurrer to the evidence should, therefore, have been sustained. Consequently the judgment of the circuit court is reversed. All concur.